DECISION
{¶ 1} Relator, Claudia M. Wrobleski, commenced this original action requesting that the court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its orders denying permission to take depositions of a physician and a vocational evaluator, to vacate its order denying permanent total disability compensation, and to issue an order granting the requested depositions and a new hearing upon completion of the depositions.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded the commission did not abuse its discretion: (1) in relying on the report of Mr. Dunn, (2) in refusing relator leave to take the deposition of Dr. Fitz, (3) in refusing relator leave to take the deposition of Ms. Lee, and (4) in relying on the report of Mr. Darling. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator has filed an "objection" to the magistrate's decision. Although the filed document fails to set forth a specific objection, relator's memorandum in support of the objection largely reargues the matters set forth in the magistrate's decision. For the reasons set forth in the magistrate's decision, the objection is overruled.
 {¶ 4} While relator suggests the magistrate misconstrued her argument concerning the report of vocational consultant Mr. Dunn, in fact the magistrate addressed relator's contention, noting that the "heart of Mr. Dunn's report was that claimant had the vocational ability to perform clerical work of the sedentary nature. He concluded that, if one accepted medical evidence that claimant had the medical capacity to perform sedentary work, then claimant was employable from a vocational standpoint." (Magistrate Decision ¶ 49.)
 {¶ 5} Relator also contends the magistrate misconstrued her contentions regarding the deposition of Dr. Fitz. Again, however, the magistrate understood relator's position, but properly found it unpersuasive. As the magistrate noted, the commission dismissed claimant's request for leave to take Dr. Fitz's deposition in January 1999 because the motion did not indicate service on respondent-employer. When relator, in March 1999, sought a continuance of the permanent total disability hearing, she did not mention her request for leave to take Dr. Fitz's deposition, but premised the request on the commission having failed to rule on her request to take the deposition of Ms. Lee. The magistrate further noted that when a hearing on relator's application for permanent total disability compensation was set in October 1999, relator did not object on the basis that she had a pending motion to take Dr. Fitz's deposition. Accordingly, the magistrate appropriately determined that the matter should not be returned to the commission for a response to relator's letter requesting the deposition of Dr. Fitz. Moreover, the magistrate properly concluded that the report of Dr. Fitz does not support relator's contention that his deposition was necessary. For the forgoing reasons, as well as those set forth in the magistrate's decision, the objection to the magistrate's decision is overruled.
 {¶ 6} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objection overruled; writ denied.
BOWMAN and TYACK, JJ., concur.
 IN MANDAMUS {¶ 1} Relator, Claudia M. Wrobleski, filed this original action asking the court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio to vacate its orders denying permission to take depositions of a physician and a vocational evaluator, to vacate its order denying permanent total disability ("PTD") compensation, and to issue an order granting the requested depositions and a new hearing upon completion of the depositions.
Findings of Fact:
 {¶ 2} 1. In September 1991, Claudia M. Wrobleski ("claimant") sustained a work-related injury, and her workers' compensation claim was allowed for low back strain, fractured right leg, aggravation of preexisting degenerative spondylosis, spinal stenosis and lumbosacral disc degeneration.
 {¶ 3} 2. In March 1996, claimant filed a PTD application. A variety of expert reports were submitted, including an October 1996 vocational evaluation from Patrick Dunn. In his report, Mr. Dunn assessed claimant's work history (as a proofreader for a printing company, credit secretary, and title clerk) and opined that it consisted of semiskilled and skilled work. He noted that claimant was a high school graduate with training in office practices. Mr. Dunn reviewed medical reports by Dr. Runge (who found "100% medical impairment"), Dr. Koppenhoefer (who limited claimant to sedentary work with an ergonomic chair and sit/stand freedom), and Dr. Amendt (who found that claimant had not reached maximum recovery from recent surgery but could perform sedentary duties with specific restrictions, and opining that claimant could commence working after fully healing from surgery).
 {¶ 4} In addition, Mr. Dunn set forth the results of vocational testing including reading, spelling, arithmetic, spatial perception, clerical perception, manual dexterity, motor coordination, and other areas. In several areas of the psychometric testing, Mr. Dunn noted that claimant performed poorly in areas where her job history had indicated she was skilled. He concluded that, because claimant had demonstrated capacities in an authentic work setting and over a long period of time, the work history would be given more weight than the performance in testing done in connection with an application for PTD compensation. Overall, Mr. Dunn concluded that claimant's education and work history provided her with vocational skills to perform a variety of sedentary occupations. Accordingly, he concluded inter alia that, if one accepted the medical opinions of Drs. Koppenhoefer and Amendt indicating a medical capacity to perform sedentary work, then claimant could perform sustained remunerative employment. However, Mr. Dunn cautioned that, due to the recent surgery, further medical opinions should be obtained following further recuperation to determine whether the vocational recommendations would need modification.
 {¶ 5} 3. In July 1998, the commission denied PTD, finding that claimant could return to her former duties as a bank clerk. Claimant filed a request for reconsideration, which was denied on August 26, 1998.
 {¶ 6} 4. On July 29, 1998, claimant filed another PTD application, supported by a medical opinion from Jeffery Stambough, M.D. In his brief report, Dr. Stambough listed the surgeries, noting that x-rays showed lumbar fusion with instrumentation. He said that there was a question of incomplete fusion but no further surgery was planned. He noted claimant's complaints of persistent pain and diffuse weakness in her lower extremities. He explained that claimant was being treated for "chronic benign pain syndrome" and that a pain specialist has prescribed medications "including Neurontin, Zantac, OxyContin, OxyIR, trazodone, temazepam, Paxil and Ambien." In stating his opinion as to claimant's physical capacities, Dr. Stambough stated merely that claimant was "severely incapacitated" and could not return to any employment.
 {¶ 7} 5. The employer submitted medical reports from David Randolph, M.D.
 {¶ 8} 6. In December 1998, claimant was examined on the commission's behalf by William Fitz, M.D., who noted in detail her complaints of continued pain, occasional numbness, and weakness. Dr. Fitz recounted the circumstances of the accident and reviewed claimant's history of treatment, noting her report of current medications. Claimant stated that she could walk around the block, stand for 15 minutes, and sit for 15 minutes. She was able to do some vacuuming, laundry, cooking and cleaning. Claimant reported that her medical history included a myocardial infarction, coronary artery bypass grafting, rheumatoid arthritis, and peptic ulcer disease.
 {¶ 9} In his description of his examination findings, Dr. Fitz noted that claimant's lower extremities had some deformity due to the rheumatoid arthritis, and he noted a mildly antalgic gait. He set forth detailed findings regarding range of motion for the back and hips, and provided measurements of the thighs and calves. Dr. Fitz described the results of a neurological examination including patellar and Achilles reflexes and sensation to touch. He measured strength of toe extension, ankle inversion/aversion and dorsiflexion, knee flexion, ankle plantar flexion and bilaterally. He stated the following impression:
 {¶ 10} "Lumbar sprain, herniated disc L4-5. It must be noted that the diagnosis of the fracture of her right leg was not found in her notes although the fracture of the L3 vertebral body is noted on a bone scan and I suspect this may have been more appropriately fractured than is involved in her history. She did not have any typical treatment for any type of fracture of right leg based upon the history provided."
 {¶ 11} When asked to estimate the permanent partial impairment, Dr. Fitz stated:
 {¶ 12} "It appears from the documentation that the spondylolistheses noted in April 1991 * * * would not be considered to have an unstable spine and the compression fracture was note [sic] greater than 50% and is not identified on the CT scan as it was on the bone scan. Therefore, she best fits DRE III category on Page 110, Table 72, of the AMA Guides to the Evaluation of Permanent Impairment, Fourth Edition. This equates to a 10% whole person impairment. She does have evidence of radiculopathy on exam as well. The diagnosis of a fracture to the right leg was not substantiated in the fall and I found no impairment in the leg based upon a fracture. Therefore, for that allowed claim, I would estimate a 0% impairment for the fracture of the right leg."
 {¶ 13} Dr. Fitz concluded that claimant could not return to her job at the bank due to her limitations with "prolonged standing, walking and bending and lifting." However, he opined that claimant "can perform sedentary work activity but she would need to be allowed to change positions frequently." On an accompanying checklist, Dr. Fitz indicated that, based on limited lumbar motion, spinal fusion, and complaints of leg and back pain, claimant could lift up to ten pounds, sit for five to eight hours and stand or walk for zero to three hours. The right foot could not operate foot controls but the left was unrestricted. Kneeling, crouching/bending and stooping were prohibited, but handling objects with the hands was unrestricted. Claimant could frequently reach at waist level but only occasionally reach at knee level, and could not reach at all to the floor or overhead.
 {¶ 14} 7. In December 1998, claimant filed a motion to take Dr. Fitz's deposition.
 {¶ 15} 8. In January 1999, the employer sent a letter to the commission arguing that the motion should be denied.
 {¶ 16} 9. In January 1999, the commission ordered that claimant's motion for Dr. Fitz's deposition was dismissed and held for naught because the motion did not state that the employer had been served with notice of the motion.
 {¶ 17} 10. On January 19, 1999, William Darling submitted a vocational analysis, apparently at the request of the employer, finding that claimant's age was not a considerable barrier to reemployment and that her work history was consistent with an ability to perform sedentary work. Mr. Darling opined that claimant possessed transferable skills from years of clerical work in financial institutions, including the use of computers. He concluded that claimant could work as a data entry clerk, clerical office assistant, office cashier, records clerk, collections clerk, and other options. After conducting a search of classified advertisements, Mr. Darling also provided a list of current job openings. He summarized as follows:
 {¶ 18} "From a vocational rehabilitation perspective, it would be my opinion that someone of Ms. Wrobleski's vocational and industrial injury profile would retain the ability to engage in sustained, remunerative employment. Her work history should allow her to transfer demonstrated work skills into alternate positions consistent with her current physical restrictions. Employment options identified in this report would be within her physical restrictions, would utilize her demonstrated skills and abilities and, in some instances, are currently advertised as open in her labor market. * * *"
 {¶ 19} 11. On January 29, 1999, Jennifer Stoeckel, Ph.D., submitted a vocational report on claimant's behalf.
 {¶ 20} 12. On Feb. 1, 1999, claimant wrote a letter to the commission. Although she did not deny that her motion failed to indicate service on the employer, she asserted that the employer had in fact been served and provided documents to support the assertion.
 {¶ 21} 13. On February 25, 1999, a vocational evaluation was submitted by Debra Lee on behalf of the commission. Ms. Lee opined that claimant had access to jobs similar to the work she performed previously and that age was not a significant barrier. Ms. Lee stated that claimant's high school education was acceptable to meet the demands of entry-level work. In regard to training and development of further skills, Ms. Lee stated that claimant's education and history of semi-skilled office work indicated that she could acquire or enhance skills through short-term training or skill-enhancement programs. Ms. Lee also commented that, although Dr. Fitz had opined that claimant was unable to return to her job at the bank, the job duties listed by claimant in her vocational questionnaire appeared to be within Dr. Fitz's list of medical restrictions.
 {¶ 22} 14. On March 29, 1999, claimant filed a motion for leave to take the deposition of Ms. Lee. At that point, there was also pending the request to reinstate claimant's motion for the deposition of Dr. Fitz.
 {¶ 23} 15. On March 30, 1999, claimant filed a request to continue the PTD hearing based on the fact that the commission had not yet ruled on claimant's motion to take Ms. Lee's deposition.
 {¶ 24} 16. The commission granted the continuance.
 {¶ 25} 17. In May 1999, the commission denied leave to take Ms. Lee's deposition, finding no substantial disparity that required a deposition. The commission stated that the difference of opinion on claimant's employability could be best resolved through the hearing process. A PTD hearing was scheduled to be held in October 1999.
 {¶ 26} 18. On October 1, 1999, the PTD application was heard by a staff hearing officer, who ruled as follows:
 {¶ 27} "The Staff Hearing Officer finds that the claimant's condition has become permanent and that she is unable to return to her former position of employment as a title clerk due to the allowed condition in this claim.
 {¶ 28} "* * * Dr. Fitz opined that the claimant would be capable of performing sustained remunerative work of a sedentary nature as long as the claimant could change positions frequently. Dr. Fitz stated that the claimant could sit for 5-8 hours, stand and walk up to three hours and carry up to 10 pounds. Dr. Fitz further opined that the claimant could not climb stairs or ladders. The claimant could not reach overhead but could reach occasionally at knee level and frequently at waist level.
 {¶ 29} "The Staff Hearing Officer finds that the capabilities listed by Dr. Fitz are the capabilities the claimant has as a result of the recognized conditions in this claim.
 {¶ 30} "Dr. Stambough, claimant's attending physician, in a report dated 3/12/98 opined that the claimant is totally and permanently disabled. Dr. Stambough further opined that based on the claimant's industrial injury and subsequent multiple spine surgeries that the claimant is permanently and totally disabled.
 {¶ 31} "The Staff Hearing Officer finds that the claimant is 63 years old with a high school education. The Staff Hearing Officer further finds that the claimant has received extensive on the job training. The Staff Hearing Officer finds that the claimant can read, write and do basic math per her Permanent and Total Disability Application.
 {¶ 32} "The Staff Hearing Officer finds that the claimant worked as a credit secretary and title clerk.
 {¶ 33} "Mr. Dunn, vocational consultant in a report dated 6/15/96 opined that the claimant's work history consists of semi-skilled and skilled type of work which would allow the claimant to have the necessary skill to perform a variety of occupational within the sedentary range of physical demand.
 {¶ 34} "Mr. Darlin[g], rehabilitation counselor, in a report dated 1/19/99, opined that the claimant retains the ability to engage in sustained remunerative employment. The claimant's work history would allow her to transfer demonstrated work skills into alternate positions consistent with her current physical restrictions.
 {¶ 35} "The Staff Hearing Officer finds based on the enumerated physical capabilities and the non-medical disability factors, that the claimant is capable of performing sustained remunerative employment.
 {¶ 36} "Therefore, the claimant's Permanent and Total Disability Application is denied."
Conclusions of Law:
 {¶ 37} In this original action involving a denial of PTD consideration, claimant contends that the commission abused its discretion: (1) in relying on the report of Mr. Dunn, which must be barred from evidentiary consideration as a matter of law; (2) in refusing leave to take the depositions of Dr. Fitz; (3) in refusing leave to take the deposition of Ms. Lee; and (4) in relying on the report of Mr. Darling, which must be barred from evidentiary consideration as a matter of law.
 {¶ 38} In regard to Mr. Dunn's vocational report, claimant argues that the commission could not lawfully rely on it because the report was written in June 1996 and included consideration of medical reports that were not before the commission in the 1999 proceedings. For the following reasons, the magistrate finds no abuse of discretion.
 {¶ 39} First, expert reports dated several years prior to the hearing are not barred from evidentiary consideration as a matter of law. See, generally, State ex rel. Menold v. Maplecrest Nursing Home (1996), 76 Ohio St.3d 197; State ex rel. Hiles v. Netcare Corp. (1996),76 Ohio St.3d 404, 407.
 {¶ 40} Second, there is no authority for the proposition that the commission is barred from relying on expert reports that predate the filing of the PTD application by 15 months or any other period of time. Although there is a filing requirement under which the claimant must file a recent report with the PTD application, that requirement relates only to claimant's filing of the application. See Ohio Adm. Code 4121-3-34(C). In contrast, at the hearing, the parties and the commission may rely on any expert report in the file that contains relevant information and/or relevant opinions. E.g., Menold; Hiles; State ex rel. Shields v. Indus. Comm. (1996), 74 Ohio St.3d 264, 268.
 {¶ 41} At some point, of course, a report may be so remote that it loses evidentiary value. In some cases, intervening events may reduce or destroy the relevance of a medical or vocational opinion after it has been rendered. In some cases, a remote report is relevant for some purposes but not others. For example, a report of claimant's medical status in 1990 would not ordinarily be relevant to a determination of claimant's medical status in 2000, but it could be relevant to a withdrawal from employment or training that took place in 1990, and those issues may be involved in the PTD consideration.
 {¶ 42} Likewise, a vocational evaluation may include information and opinions regarding education, work experience, and aptitudes that can remain relevant for many years. That is, a vocational opinion regarding whether a claimant's education and vocational skills permit or preclude sedentary employment retains relevance regardless of which physician has opined that claimant is capable of sedentary employment.
 {¶ 43} In the present case, Mr. Dunn performed a 1996 evaluation of claimant's vocational ability to perform desk work of a clerical type based on her education, work history, skills and aptitudes. For example, he opined that, to the extent that vocational test results contradicted the work history, he found the work history to be more reliable. He explained why the actual work history was a more reliable indicator of skills than tests undertaken for the purpose of applying for PTD compensation. The heart of Mr. Dunn's report was that claimant had the vocational ability to perform clerical work of a sedentary nature. He concluded that, if one accepted medical evidence that claimant had the medical capacity to perform sedentary work, then claimant was employable from a vocational standpoint.
 {¶ 44} The magistrate sees no reason to bar Mr. Dunn's 1996 vocational evaluation from consideration of a PTD application filed in 1998. There were no intervening events, such as a head injury, that could destroy the relevance of his evaluation of education, aptitudes and skills. In its consideration of the 1998 application, the commission relied on a physician who found that claimant could perform sedentary work as long as she had the freedom to sit and stand as needed, and Mr. Dunn's findings were therefore relevant. The commission expressly stated that it applied Mr. Dunn's vocational assessments to "claimant's current physical restrictions." In sum, Mr. Dunn's vocational evaluation was relevant in the subsequent PTD consideration in which the commission found a medical capacity for sedentary work.
 {¶ 45} Second, claimant argues that the commission abused its discretion in denying permission to take Dr. Fitz's deposition. Pursuant to R.C. 4123.09, parties may take depositions in workers' compensation claims with permission from the bureau or as ordered by the commission. The administrative code sets forth a procedure for requesting a deposition and states that the hearing administrator will grant a reasonable request. Ohio Adm. Code 4121-3-09(A)(6)(c). The code further states that the factors for considering the reasonableness of a request for deposition "include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay." Ohio Adm. Code 4121-3-09(A)(6)(d). See, also, Williams v. Moody's of Dayton (1982), 1 Ohio St.3d 238.
 {¶ 46} In State ex rel. Cox v. Indus. Comm. (2002),95 Ohio St.3d 353, the Ohio Supreme Court reviewed the administrative rule and pointed out that, at the time the commission is determining whether to grant leave to take a deposition, it cannot know which medical reports will be relied upon to the exclusion of others. In addition, the court explained that a substantial disparity between percentage figures can be irrelevant when the issue for determination is not the percentage of disability. Id. at 355. Moreover, the court emphasized substantial disparities in the evidence are fairly commonplace in a PTD consideration and that — in a disputed disability matter — one of the primary purposes of the hearing is to present and debate the relative strengths and weaknesses of divergent reports of experts.
 {¶ 47} The court in Cox further observed that the enumerated factors for determining the reasonableness of a deposition were not exclusive and that, in some cases, it is more appropriate to consider whether there is a defect in the subject report that can be cured by a deposition and to consider whether the hearing itself is an equally reasonable option for resolving the questions.
 {¶ 48} In the present action, the commission dismissed claimant's request for leave to take Dr. Fitz's deposition in January 1999 because the motion did not indicate that it had been served on the employer. Claimant does not dispute that the initial motion did not indicate service but states that she wrote to the commission in February 1999 to explain that the motion had actually been served. Then in March 1999, claimant sought a continuance of the PTD hearing, based on the pending request for the deposition of Ms. Lee, making no mention of the fact that the request in regard to Dr. Fitz's deposition was also pending. In May 1999, the commission ruled upon the motion regarding Ms. Lee's deposition and stated that processing of the PTD application would be resumed. The PTD hearing was then scheduled to take place in October 1999.
 {¶ 49} There is no evidence that, between May and October 1999, claimant notified the commission that her request for reinstatement of the motion to take Dr. Fitz's deposition was still pending, nor did claimant seek a continuance on that basis. There is no evidence that claimant objected that the PTD hearing was scheduled to proceed when a request was still pending.
 {¶ 50} Accordingly, because the matter was set for hearing in October 1999 with no objection by claimant or request for continuance based on the pending letter request, the magistrate does not recommend at this point that the court should order this matter returned to the commission for a response to the letter. Rather, the magistrate adopts claimant's alternative position that the court may review the matter as though the commission had refused to grant authorization for Dr. Fitz's deposition on the merits. Claimant has argued that the commission's inaction was tantamount to a denial on the merits and should be reviewed by the court as a refusal to grant a motion for deposition.
 {¶ 51} First, the magistrate finds no abuse of discretion in the commission's dismissal of a motion for deposition that did not show that it was served on opposing counsel. Second, as to commission's refusal to allow a deposition of Dr. Fitz, the magistrate concludes, on review of the medical reports, that there is no disparity of a nature or degree that required granting a deposition of Dr. Fitz nor any no defect or omission in the Fitz report that requires that a deposition be authorized.
 {¶ 52} For example, the magistrate disagrees that the disparity between the reports of Drs. Stambough and Fitz requires that a deposition be authorized. Dr. Stambough's report includes a review of claimant's medical history, and Dr. Fitz recited the same history except that he provided more detail. Both doctors reported the same subjective symptoms stated by claimant, although Dr. Fitz's report was somewhat more detailed on that topic. Dr. Stambough set forth no clinical findings from a recent examination, so there is no disparity of clinical findings. Dr. Stambough set forth no specific restrictions, so there is no disparity in that area. Rather than set forth claimant's abilities for sitting, standing, walking, etc., Dr. Stambough simply described claimant's incapacities as "severe." However, Dr. Fitz set forth extensive limitations, and claimant, in her brief, characterized Dr. Fitz's report as having set forth "severe" restrictions, which supports the conclusion that the two reports were not substantially disparate. (See Relator's brief at 9.) The crucial difference between the reports is that Dr. Stambough opined that the physical limitations precluded all employment, whereas Dr. Fitz believed that the limitations, while extensive, would permit some sedentary work. This disparity is not substantial and does not impose a duty to grant a deposition.
 {¶ 53} Claimant further argues that there were crucial ambiguities in Dr. Fitz's report that required the commission to allow the deposition. The magistrate disagrees. His narrative report is clear. The form that was provided to him seeks additional information regarding the type of sedentary work that claimant can perform; however, it provides ranges of time that a claimant can perform an activity rather than a specific number of hours or minutes. For example, with regard to the extent of the injured worker's ability to work while seated — which is crucial to a finding of sedentary work capacity — Dr. Fitz indicated that claimant could sit for up to eight hours per day. In regard to claimant's ability to stand and walk, which are less crucial for many sedentary jobs, he indicated on a form that claimant could perform a job that required these activities to be performed from zero to three hours. He did not mark the choice that said claimant could perform these activities "not at all." This form must be read in the context of the entire report.
 {¶ 54} In his narrative, Dr. Fitz noted claimant's report that she could walk around the block and that she could stand for 15 minutes. In addition, Dr. Fitz stated in his narrative that claimant could perform sedentary work as long as she had the option to stand and walk as she found necessary, thus indicating that she was capable of standing and walking during the workday. His report as a whole is sufficiently clear that claimant can perform some walking and standing during the day in connection with performing sedentary work. The magistrate is aware of no requirement that, when a physician recommends that a claimant can perform work while seated as long as she has the option to stand and move as desired, the physician must state a specific number of minutes that the claimant can stand. A medical report with ranges rather than specific estimates is not fatally defective, although a party can reasonably argue at hearing that the report was weak for that reason.
 {¶ 55} Also, the fact that Dr. Fitz recited claimant's self-report of her physical restrictions does not mean that he accepted her view of her maximum capacities. The magistrate is aware of no principle that a medical opinion is defective when the physician does not explicitly discuss how much of each subjective complaint he found to be valid or reasonable. In sum, Dr. Fitz's report was not defective as a matter of law, and the commission had no duty to grant a deposition as a matter of law.
 {¶ 56} As for the vocational evaluation of Ms. Lee, the magistrate also finds no disparity or defect of a type that requires the commission to grant a deposition. Her opinions are sufficiently clear. The magistrate acknowledges that Ms. Lee commented that, based on claimant's description of her duties in the vocational questionnaire, it appeared that the clerical job at the bank would be within the specific medical capacities identified by Dr. Fitz. Ms. Lee essentially noted that Dr. Fitz had found that the former job involved prolonged standing, bending and lifting, and she indicated her disagreement with this understanding of the job duties. The magistrate finds no fatal flaw that would disqualify her report from consideration, nor does the magistrate find that a deposition was necessary for her to explain the inexplicable.
 {¶ 57} The basis of her comment is evident on the face of the record. A reasonable person who reads the questionnaire completed by claimant and then reviews Dr. Fitz's statements of claimant's physical limitations/capacities could conclude that it seemed that claimant had the medical capacity to perform the job duties she listed, if one accepted Dr. Fitz's limitations/capacities. Ms. Lee's commentary did not require that her deposition be granted. Moreover, the commission did not rely on Ms. Lee's opinion. The commission accepted Dr. Fitz's opinion that claimant could not return to that particular job at the bank. Therefore, considering all the circumstances, the magistrate concludes that claimant has not met her burden of proving an abuse of discretion in the denial of Ms. Lee's deposition.
 {¶ 58} Last, the magistrate finds that claimant has not met her burden of proving a fatal defect in Mr. Darling's report. Claimant argues that Mr. Darling did not clearly establish in his report that the jobs he listed as options would permit claimant to change her position as needed, nor did he establish that none of the jobs he listed would require kneeling, bending or stooping. The magistrate concludes that claimant has not proved that Mr. Darling's report must be removed from evidentiary consideration as a matter of law because he did not list all the restrictions imposed by Dr. Fitz. Claimant has not demonstrated in mandamus that the jobs listed by Mr. Darling required claimant to perform physical activities beyond the physical capacities in Dr. Fitz's report that the commission accepted.
 {¶ 59} For all the foregoing reasons, the magistrate concludes that claimant has not met her burden of proof in mandamus and recommends that the court deny the requested writ.