[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 353.]

THE STATE EX REL. COX, APPELLANT, *v*. GREYHOUND FOOD MANAGEMENT, INC. ET AL., APPELLEES.

[Cite as *State ex rel. Cox v. Greyhound Food Mgt., Inc.*, 2002-Ohio-2335.]

*Workers' compensation—Application for permanent total disability compensation benefits—Industrial Commission's denial of claimant's request for deposition not unreasonable, when—Ohio Adm.Code 4121-3-09(A)(6)(d), construed and applied.*

(No. 2001-0327—Submitted February 26, 2002—Decided May 29, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-110.

————————————

PER CURIAM.

{¶1} Appellant-claimant, Lowell B. Cox, sprained his back at work in 1983. He was forty-one years old. Claimant allegedly worked sporadically for the same employer for the next three years. He left his job in 1986. Claimant alleged that his departure was due to pain. Other evidence indicates that the claimant was put out of work when the plant closed. In any event, claimant has not worked since. All treatment has been conservative.

{¶2} In 1995, claimant moved appellee Industrial Commission of Ohio for permanent total disability compensation ("PTD"). Two physicians' reports are significant. Dr. Jose Luiz Chavez reported:

{¶3} "Examination in the sitting position indicates 2+ prepatellar, 1+ Achilles tendon reflexes bilaterally. Examination in the supine position indicates that both lower extremities are equal length and diameter. * * * There is [sic] some sensory disturbances along the lateral aspect of the left thigh. There is questionable weakness for dorsiflexion of the left great toe when compared to the right. Straight leg raising in the supine position is achieved on the right leg at 80°, left leg 75°. In

the sitting position, the right leg can be elevated to 80°, left leg 75° with complaint of back pain although no specific symptoms are identified.

{¶4} "Examination of Mr. Cox in the standing position indicates the spine is straight, pelvis is level, lumbar lordosis is well-preserved. There are no masses or spasms. Range of motion of the torso is as follows: forward flexion is 40°, extension is 20°, flexion to the left 22°, to the right 22°, rotation to the right 35°, to the left 35°. Mr. Cox has difficulty walking on his toes, difficulty walking on his heels, and has difficulty squatting down."

{¶5} Dr. Chavez concluded that claimant could not lift over thirty pounds. He felt that claimant could do light to moderate work, but could not return to his former cashier job as it involved "significant lifting."

{¶6} Dr. Stephen S. Wunder's examination revealed:

{¶7} "[Claimant's] gait pattern did not show any lateralizing antalgia.

{¶8} "Inspection of his spine revealed that there were no abnormal curves. He was tender to palpation left more than right.

{¶9} "He would forward flex through 60°, extend through 20° and bend 20° to the right and 10° to the left.

{¶10} "His manual motor muscle testing showed diffuse give-way responses and was not considered clinically reliable. His sensory examination showed a hemisensory loss to the left leg over the lateral portion of it that was non-dermatomal. His reflexes were noted to be 2+, equal and symmetric at the patellar and Achilles tendon. He had a negative flip sign, straight leg raise was negative.

{¶11} "Interestingly enough, he complained of back pain associated simply with ankle movements. He did not complain as much with knee movements."

{¶12} Dr. Wunder assigned a five percent permanent partial impairment to claimant's condition and felt that claimant could return to his former position of employment, but should avoid repetitive bending.

**{¶13}** Claimant, asserting a substantial disparity between Dr. Wunder's opinion and Dr. Chavez's, moved to depose the former. The commission denied the request, finding no substantial disparity, but simply "a difference of opinion which can most fairly be resolved through the hearing process."

**{¶14}** The Court of Appeals for Franklin County, on claimant's petition in mandamus, denied the writ, prompting claimant's appeal as of right.

**{¶15}** The commission "may cause depositions of witnesses * * * to be taken." R.C. 4123.09. When that witness is a commission or bureau doctor, deposition requests are evaluated under a reasonableness standard. Ohio Adm.Code 4121-3-09(A)(6)(c) and (d). This is prudent, so as to avoid depositions intended to harass or delay. Unfortunately, the Administrative Code's review criteria are vague and often unworkable, and ignore the reality of the hearing process.

**{¶16}** Specifically, Ohio Adm.Code 4121-3-09(A)(6)(d) provides:

**{¶17}** "The factors to be considered * * * when determining the reasonableness of the request for deposition * * * include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay."

**{¶18}** The term "substantial disparity" is undefined in the context of permanent total disability. In our only two encounters with the term, "substantial disparity" was approached from a strictly numerical standpoint, comparing the percentages of doctor-assessed impairment. This approach worked in *State ex rel. Gen. Motors Corp. v. Indus. Comm.* (1976), 47 Ohio St.2d 244, 251-252, 1 O.O.3d 141, 351 N.E.2d 442, where the issue was permanent partial disability ("PPD"), partly because in PPD cases, "substantial disparity" is defined as a difference of fifteen percent or more. Ohio Adm.Code 4121-3-15(3)(c). The approach did not work in *Williams v. Moody's of Dayton, Inc.* (1982), 1 Ohio St.3d 238, 1 OBR 260,

438 N.E.2d 1162, a temporary total disability case. The Administrative Code speaks to a "substantial disparity * * * on the issue that is under contest." The key to eligibility for temporary total disability benefits is not the percentage of disability—it is whether the claimant can return to the former position of employment. Substantial disparity between percentage figures can be irrelevant in such cases. Doctors can assign wildly different disability percentages, yet agree that a claimant can work, which is the scenario here.

{¶19} Moreover, even without numerical comparison, the substantial-disparity criterion often does not recognize the fundamentals of the hearing process. Disability hearings occur precisely because there *is* a disparity in the medical evidence. Unanimity does not usually generate a hearing. To the contrary, the need for a hearing generally arises when one doctor says that a claimant can work and the other disagrees. They are completely opposite opinions and that is why there is a hearing—to debate a disputed report's strengths and weaknesses. Once the hearing is concluded, the commission can accept the disputed report or reject it as unpersuasive.

{¶20} This observation ties into an important point made in *State ex rel. Firestone Tire & Rubber Co. v. Indus. Comm.* (1989), 47 Ohio St.3d 78, 547 N.E.2d 1173. There, we recognized that a physician deposition would not cure a deficiency caused by the *commission's* failure to consider or properly evaluate the evidence before it.

{¶21} And this indeed is a concern, given the second criterion articulated by the Administrative Code for determining whether a deposition request is reasonable—the commission's exclusive reliance on one of several reports. Unfortunately, however, the logic of this criterion fares no better under scrutiny. Again, the nature and purpose of the hearing process are given scant consideration, resulting in three key flaws. First, where doctors differ, resolution inherently requires choosing one over the other. An order granting or denying benefits cannot

"rely" on two diametrically opposed opinions. We alluded to this in *Firestone's* criticism of the exclusivity criterion, stressing that "[t]he commission has never been required to *rely* on all the evidence before it—it need only *consider* it." (Emphasis sic.) Id., 47 Ohio St.3d at 80, 547 N.E.2d 1173.

{¶22} Second, the exclusive-reliance factor ignores a crucial element of timing. Whether the commission relied exclusively on one of several opinions cannot be determined until the disability order is issued. By then, any deposition would come too late.

{¶23} Third, as stated previously, a deposition would only be useful for correcting an irregularity that originates in the particular physician's report. If the alleged irregularity arises from the commission's exclusive reliance on a particular report, no physician deposition can fix it.

{¶24} These deficiencies generate but one conclusion: the code's first two criteria, in most cases, are not very useful in determining the reasonableness of a deposition request. Fortunately, Ohio Adm.Code 4121-3-09(A)(6)(d)'s use of the word "include" in listing criteria implies that other factors may be considered as circumstances dictate. In this case, we indeed rely on two other criteria: (1) Does a defect exist that can be cured by deposition? and (2) Is the disability hearing an equally reasonable option for resolution?

{¶25} Applying these considerations here, our review suggests that the commission did not abuse its discretion in denying claimant's motion to depose. Excluding a third report (Dr. Winston's) from analysis because it included nonmedical disability factors, claimant's objection pits claimant's Dr. Chavez's report against that of the commissioner examiner, Dr. Wunder.

{¶26} Claimant first asserts a substantial disparity between Dr. Chavez's sixty-five percent impairment and Dr. Wunder's five percent. This disparity is certainly substantial. But it is irrelevant because both doctors agreed that claimant can indeed work—*the* pivotal PTD question.

**{¶27}** Claimant next asserts that Dr. Wunder's report is internally inconsistent, in that Dr. Wunder imposes a repetitive-bending limitation yet states that claimant can return to his old job. This may be true, but the commission, in its prerogative, can disqualify as fatally flawed a report that is so internally inconsistent as to negate its credibility. Because this is a potential problem that the commission can address and remedy without resort to deposition, it is not an abuse of discretion for the commission to elect to do so.

**{¶28}** Claimant last accuses the commission of denying him due process, claiming that the deposition refusal denied him "an opportunity to offer contrary presentation." This is untrue. Claimant had the opportunity at the PTD hearing to enumerate all of the flaws in Dr. Wunder's report, and highlight the strengths of his own examiner's opinion. Due process does not require a deposition in addition.

**{¶29}** The commission's decision to deny the request for deposition was not unreasonable and is hereby upheld. Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK AND LUNDBERG STRATTON, JJ., CONCUR.

———————————

Butkovich, Schimpf, Schimpf & Ginocchio Co., L.P.A., and Stephen P. Gast, for appellant.

Betty D. Montgomery, Attorney General, and Dennis H. Behm, Assistant Attorney General, for appellee Industrial Commission.

———————————