DECISION
{¶ 1} Relator, Rick Palmore, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to either compel the commission to state the evidence upon which it relied when it denied relator's application for permanent total disability ("PTD") or to issue an order granting relator's application for PTD, filed August 24, 2001. See December 3, 2002 complaint.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. In his brief before the magistrate, relator argued, inter alia, that "the commission abused its discretion when it failed to permit him to depose its' [sic] vocational expert. Following this decision, the commission then proceeded to rely upon this vocational opinion to deny relator's application for PTD." On July 28, 2003, the magistrate issued a decision, including findings of fact and conclusions of law. The magistrate concluded that "the commission did not abuse its discretion in denying relator's motion to depose [the vocational expert]." The magistrate recommended that this court deny the requested writ of mandamus. Relator has filed an objection to the magistrate's decision, and the matter is now before this court for a full, independent review.
 {¶ 3} Upon our independent review of the record, we agree with the magistrate's analysis regarding the commission's alleged abuse of discretion in its denial of the motion to depose. Additionally, we agree with the magistrate that the non-medical factors were properly considered. Dr. Klein's employability assessment report specifically considered the effects of non-medical factors. Furthermore, the commission's order that denied relator's application for PTD relied upon, and outlined, Dr. Klein's findings regarding the non-medical factors.
 {¶ 4} In view of the December 3, 2002 complaint, we find the magistrate's opening paragraph to be a mischaracterization of relator's requested relief. Nonetheless, this mischaracterization is inconsequential to the disposition of this case. We find that the magistrate has otherwise properly discerned the pertinent facts and applied the relevant law to those facts. The arguments contained within relator's objection to the magistrate's decision are without merit. Accordingly, relator's objection to the magistrate's decision is overruled. Pursuant to Civ.R. 53(E)(4)(b), we adopt the magistrate's findings of fact and conclusions of law. In accordance with the magistrate's decision, we hereby deny the requested writ of mandamus.
Objection overruled; writ denied.
Bryant and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Rick Palmore, : Relator, : v. : No. 02AP-1347 Industrial Commission of Ohio : (REGULAR CALENDAR) and Typographic Printing Co., : Respondents. :
 MAGISTRATE'S DECISION Rendered on July 28, 2003. IN MANDAMUS {¶ 5} In this original action, relator, Rick Palmore, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his motion to depose the commission's vocational expert, and to enter an order allowing the deposition.
 Findings of Fact {¶ 6} 1. On November 15, 1996, relator sustained an industrial injury while employed as a warehouse clerk for respondent Typographic Printing Co., a state-fund employer. The industrial claim is allowed for: "sprain lumbar region; lumbar/lumbosacral disc degeneration; herniated disc L4-L5," and is assigned claim number 96-552848.
 {¶ 7} 2. On October 24, 2001, relator filed an application for permanent and total disability ("PTD") compensation.
 {¶ 8} 3. On February 19, 2002, relator was examined by commission specialist Boyd W. Bowden, D.O. Dr. Bowden issued a narrative report and he completed a "physical strength rating" form on which he indicated that relator could perform "sedentary work."
 {¶ 9} 4. The commission requested an employability assessment report from Michael A. Klein, Ph.D., a vocational expert. Dr. Klein's report, dated April 18, 2002, responds to the following query:
"Based on your separate consideration of reviewed medical and psycho-logical opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation, or brief skill training."
 {¶ 10} Indicating acceptance of Dr. Bowden's reports, Dr. Klein listed the following employment options: "A) Inspector, sorter, electronic assembly, microfiche operator, packer. B) Office clerk, telephone sales, insurance clerk, quotation clerk."
 {¶ 11} Dr. Klein's report further states:
"III. EFFECTS OF OTHER EMPLOYABILITY FACTORS:
"1. How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) affect his/her ability to meet basic demands of entry level occupations?
"Age: Age should be a positive factor in re-employment potential.
"Education: Sufficient education for re-entry into the workforce and remediation.
"Work History: Good work history, good job maintenance tenure, and work adjustment behavior.
"Other: From Statement of Facts: `Claimant has filed for Social Security Disability benefits. Claimant indicates he can read, write and do basic math. * * *'
"2. Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
"No indication claimant cannot remediate to entry level employment.
"3. Are there significant issues regarding potential employability limitations or strengths which you wish to call to the SHO's attention?
"None.
"* * *
"B. WORK HISTORY
Skill Strength
 "Job Title * * * Level Level Dates
Grocery Clerk * * * Semi-skilled Light 10/99-2001 Warehouse Clerk * * * Semi-skilled Light 11/91-5/97 Glazier * * * Semi-skilled Medium 1984-1991 Forklift operator * * * Semi-skilled Medium 1974-1984
"C. EDUCATIONAL HISTORY:
 Highest grade completed: 10th Grade Date of last attendance: 1971 H.S. graduate: No GED: No Vocational training: Welding history ICO Educational Classification: Limited"
 {¶ 12} 5. Relator obtained a report dated May 6, 2002, from Julie Morrissey, a vocational expert. The Morrissey report finds that relator "is not a candidate for a significant number of jobs existing either locally, regionally or nationally."
 {¶ 13} 6. On May 20, 2002, relator moved to depose Dr. Klein. In support of the motion, relator argued:
"Upon reviewing Mr. Klein's report, it would appear that the vocational evaluator would suggest that the injured worker is capable of performing sedentary work as an inspector, sorter, electronic assembly, microfiche operator, packer, office clerk, telephone sales, insurance clerk or quotation clerk — amongst other positions. Mr. Palmore would request the opportunity to depose the vocational evaluator to obtain a more detailed description of these job titles to ascertain: 1) whether they are truly appropriate vocational options for him based upon the restrictions imposed by Dr. Bowden; and, 2) what information would lead Dr. Klein to conclude that these would be appropriate vocational options for the injured workers."
 {¶ 14} 7. Following a July 9, 2002 hearing, a staff hearing officer ("SHO") issued an order denying relator's motion to depose the commission vocational expert. The SHO's order states:
"Following review of the claim file and all relevant evidence, it is the finding of the Staff Hearing Officer that the injured worker's motion is unreasonable because the reasons noted in the motion, i.e. whether they are appropriate vocational options and based on what information, are contained within the report itself. Dr. Klein indicates the jobs the claimant could/can perform are based on the physical restrictions/opinions of each indicated physician. The positions are found in the Dictionary of Occupational Titles. Furthermore, the issues involved are ultimately the decisions and province of the Staff Hearing Officer assigned to the permanent total disability hearing and that individual may accept or reject the opinion of Dr. Klein as they deem appropriate. Therefore, this Staff Hearing Officer finds that the claimant's motion to depose Dr. Klein (vocational report) is not necessary or appropriate. Therefore, it is the order of the Staff Hearing Officer that the injured worker's motion is denied. * * *"
 {¶ 15} 8. Following an August 6, 2002 hearing, another SHO issued an order denying relator's PTD application. The SHO's order of August 6, 2002, states:
"The Staff Hearing Officer relies upon the persuasive report of the Industrial Commission specialist Boyd W. Bowden, D.O., dated 02/22/2002 who evaluated the claimant to support the denial of the injured worker's permanent total motion filed 10/24/2001. Dr. Bowden found that the injured worker had reached maximum medical improvement with conservative care and that this maximum medical improvement was in direct relationship to the injury of 11/15/1996 and that he had a ten percent whole person impairment.
"On physical strength rating Dr. Bowden stated that the claimant was capable of sedentary work. Sedentary work is defined as exerting up to ten pounds of force occasionally, activity or condition exists up to one-third of the time or for a negligible amount of force frequently from one-third to two-thirds of the time. The injured worker can reach, carry, push or pull or otherwise move objects. Sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. Therefore[,] based upon the physical evaluation and the physical strength rating as determined by Dr. Bowden, it is the finding of the Staff Hearing Officer that the injured worker, Rick R[.] Palmore, retains physical strength and physical capacity to perform sedentary work.
"The claimant is presently age 48 (06/14/1954) and would be considered a person of a younger age. This would be considered a vocational asset which would assist him in obtaining employment. Further, he has a tenth grade education which is sufficient for re-entry into the work force and would be a significant positive factor for remediation to learn new skills. He has a significant prior work history which would show he has the ability to perform several types of varied employment and has adjusted to several types of prior employment situations. His prior employment has included forklift operator for ten years, a glazier for approximately seven years which are both medium level employment and semi-skilled. A warehouse clerk for six years which is semi-skilled and light, and a grocery clerk for two years which is semi-skilled and light. The Staff Hearing [Officer] would therefore conclude that his work history is a positive factor which would assist him in obtaining work consistent with his residual functional capacity if he were to elect to return to sustained remunerative employment. It is further noted that the injured worker received some welding training subsequent to his quitting school.
"Further[,] the Staff Hearing Officer relies upon the Employability Assessment of Michael A. Klein, Ph.D., dated 04/16/2002. Dr. Klein notes that based upon the evaluation of Dr. Bowden of 02/19/2002, the injured worker can perform sedentary work and has the necessary skills and education to perform the jobs of inspector, sorter, electronic assembler, microfiche operator, packer, office clerk, telephone sales, insurance clerk, and quotation clerk. Dr. Klein noted the following factors: age should be a positive factor in re-employment potential: sufficient education for re-entry into workforce and remediation: good work history, good job maintenance tenure and work adjustment behavior. He stated that there was no indication that the injured worker can not remediate to enter entry level employment.
"Therefore, the Staff Hearing Officer concludes that based upon the evaluation of Dr. Klein the injured worker possesses sufficient assets to return to sustained remunerative employment.
"Therefore, the Staff Hearing Officer finds that an award of permanent and total disability compensation should be reserved for the most severely disabled workers and should be allowed only when there is no possibility of reemployment State ex rel.B.F. Goodrich Company v. Industrial Commission
(1995), 73 Ohio St.3d 525.
"Therefore, the Staff Hearing Officer finds based upon a careful consider-ation of the above evidence as stated in the reports of Dr. Bowden and Dr. Klein, as well as all the evidence in the file and adduced at the hearing, it is the finding that the injured worker is capable of performing sustained remunerative employment consistent with the job titles identified by the vocational expert and is therefore not permanently and totally disabled."
 {¶ 16} 9. On December 3, 2002, relator, Rick Palmore, filed this mandamus action.
Conclusions of Law
 {¶ 17} The issue is whether the commission abused its discretion in denying relator's motion to depose the commission's vocational expert, Dr. Klein. Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 18} R.C. 4123.09 provides that the commission "may cause depositions of witnesses * * * to be taken."
 {¶ 19} Supplementing the statute, Ohio Adm. Code4121-3-09(A)(6) sets forth a procedure for obtaining depositions of a commission or bureau physician. Deposition requests are evaluated under a reasonableness standard. Ohio Adm. Code4121-3-09(A)(6)(c) and (d); State ex rel. Cox v. Greyhound FoodMgt., Inc., 95 Ohio St.3d 353, 355, 2002-Ohio-2335.
 {¶ 20} Ohio Adm. Code 4121-3-09(A)(6)(d) states:
"The factors to be considered by the hearing administrator when determining the reasonableness of the request for deposition and interrogatories include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay. * * *"
 {¶ 21} After extensively discussing the deficiencies of the "substantial disparity" criteria and the exclusive reliance criteria, the Cox court concluded that the code's first two criteria, in most cases, are not very useful in determining the reasonableness of a deposition request. Cox, supra, at 356. The court stated that, fortunately, the code implies that other factors may be considered as circumstances dictate. In Cox, the court relied upon two other criteria to judge the reasonableness of the deposition request: (1) Does a defect exist that can be cured by deposition?; and (2) Is the disability hearing an equally reasonable option for resolution?
 {¶ 22} Ohio Adm. Code 4121-3-09(A)(6), by its terms, applies to requests for depositions of commission or bureau physicians. There is no corresponding code provision regulating requests for depositions of vocational experts. Nevertheless, R.C. 4123.09
presumably gives the commission the authority to grant requests for depositions of non-physicians even in the absence of a rule setting forth the procedure for obtaining such depositions.
 {¶ 23} According to relator, a deposition is necessary so that relator can probe whether or not Dr. Klein actually considered the non-medical factors in listing the employment options relied upon by the commission in its order that pertain to Dr. Bowden's sedentary work restriction. According to relator, the commission's query to Dr. Klein suggests that Dr. Klein was instructed not to consider the non-medical factors in listing employment options. In short, relator believes that Dr. Klein's list of employment options is merely a list of sedentary occupations that do not necessarily pertain to relator's vocational profile.
 {¶ 24} The magistrate disagrees with relator's assertion or suggestion here that Dr. Klein's report leaves some doubt as to whether he considered the non-medical factors in listing the employment options. Under "effects of other employability factors," Dr. Klein considers the non-medical factors. Dr. Klein's report itself makes it clear that the employment options were listed after consideration of the non-medical factors.
 {¶ 25} Moreover, the commission's Employability Assessment Manual instructs the vocational expert as to how he or she will determine employment options. The commission's Employability Assessment Manual states in part:
"1. Question: Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or, (B) following appropriate academic remediation or brief skill training.
"Identified occupations must reflect your professional understanding of actual demands of jobs which are commonly found in the labor market. List separately those occupations which (A) substantially match the claimant's current capacities and (B) those for which the claimant will be qualified following attainment of specified academic remediation or brief skill training which you find to be reasonable based on your review of available data.
"Academic remediation includes basic reading and arithmetic skills as well as specific abilities commonly developed in OJT. Brief skill training includes both OJT and other skill development programs.
"* * *
"The first part of the question directs you to respond separately to each of the medical/psychological reports which you have detailed. * * * Respond to each report as if it were the only medical or psychological opinion of which you are aware. * * *
"Your responses to each report must address 2 issues: (A) any occupations in which the claimant is presently employable and (B) any occupations in which the claimant will be employable following reasonable remediation or brief skill training. * * *
"In identifying occupations which the claimant can perform, you may use either DOT Job Titles or OES Occupational Titles (as found in OBES Labor Market projections). * * *
"If a given medical/psychological opinion leads you to find the claimant employable, list 6-8 appropriate DOTs or 6 OES Classifications, representing (when possible) opportunities in retail, clerical, service or production industries. Be precise in providing actual job titles — do not state `light-level clerical positions'.
"If you find employability, we want your list to reflect realistic job options, which would be used by the claimant as a guide in setting up a job search. Please eliminate any job titles which represent rarely found occupations.
"Occupations which you identify as feasible for the claimant — either at present or following remediation or brief training — must be selected on the basis of your professional understanding of their demands. Obviously, this understanding will reflect the narrative and numerical description of these occupations in Labor Department publications. Your personal knowledge of `real world' job demands is also expected.
"Identified jobs must `substantially match' the claimant's capacities. An exact match between formal DOT job demands and claimant capacities is not necessary if your professional experience leads you to believe that the claimant possesses capacity to perform identified jobs as they are commonly found in the labor market. For example, some Cashier jobs may not require Level 3 Math and some Clerical jobs may not require average or above average Clerical Perception. Of course, you must be prepared to explain or defend any identified job matches which are based on your professional opinion rather than strictly on DOT-type data."
 {¶ 26} The commission's instructions to the vocational expert leave no doubt that the vocational expert shall consider the non-medical factors in listing the employment options.
 {¶ 27} Certainly, it is always possible that an expert did not follow his or her instructions from the commission. Here, there is absolutely no evidence or indication within the report of Dr. Klein to even suggest that he failed to apply the commission's instructions or that he simply failed to consider the non-medical factors.
 {¶ 28} Applying the Cox criteria to relator's request to depose Dr. Klein, it is clear that the commission did not abuse its discretion in denying relator's motion to depose. First, the alleged defect sought to be cured — Dr. Klein's alleged failure to consider the non-medical factors — is not a defect at all. Second, the disability hearing is the appropriate forum to resolve the issue of the reliability or credibility of Dr. Klein's report.
 {¶ 29} In short, the commission did not abuse its discretion in denying relator's motion to depose Dr. Klein.
 {¶ 30} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.