IN MANDAMUSON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Sears Roebuck Company, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its award of permanent total disability ("PTD") *Page 2 
compensation to claimant-respondent, Sue Moenter ("claimant"), and to enter an order denying said compensation. Alternatively, relator requests that this court issue a writ ordering the commission to vacate its award, to permit relator to depose James Rutherford, M.D., and to enter a new order adjudicating the PTD application. [D1]
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant a writ to the extent that the commission be ordered to amend its May 26, 2005 order awarding PTD compensation, adjusting the date that claimant's PTD award commences to March 24, 2004, rather than January 15, 2004. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision. In its objections, relator essentially makes the same arguments previously raised before the commission. Specifically, relator contends that the report of Dr. Rutherford is equivocal and inconsistent, and that he relied on non-allowed conditions in rendering his opinion as to PTD; further, relator contends, the commission abused its discretion in denying relator's request to depose Dr. Rutherford. The magistrate considered those arguments and rejected them. In reviewing the record, we agree with the magistrate's reasoning and analysis, and we similarly conclude that the report of Dr. Rutherford is consistent and based upon the allowed conditions, and that the commission did not abuse its discretion in denying relator's request to depose Dr. Rutherford.
 {¶ 4} After an examination of the magistrate's decision, as well as an independent review of the evidence, we overrule relator's objections to the magistrate's decision, finding that the magistrate sufficiently discussed and determined the issues *Page 3 
raised by relator. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Based upon the magistrate's recommendation, this court issues a writ to the extent the commission is ordered to adjust the date the award of PTD compensation commences to March 24, 2004.
Objections overruled; writ granted.
 FRENCH and McGRATH, JJ., concur. *Page 4 
 APPENDIX A
MAGISTRATE'S DECISION
Rendered on September 26, 2006
Reminger Reminger Co., L.P.A., Ronald A. Fresco and Kendall D.Isaac, for relator.
Jim Petro, Attorney General, and Kevin R. Sanislo, for respondent Industrial Commission of Ohio.
Philip J. Fulton Law Office and William A. Thorman, III, for respondent Sue Moenter.
IN MANDAMUS
 {¶ 5} In this original action, relator, Sears Roebuck Company, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of permanent total disability ("PTD") compensation to respondent Sue Moenter *Page 5 
("claimant") and to enter an order denying said compensation. In the alternative, relator requests that the writ order the commission to vacate its award, to permit relator to depose James Rutherford, M.D., and to enter a new order adjudicating the PTD application.
Findings of Fact:
 {¶ 6} 1. On January 17, 1979, claimant fell on an icy parking lot while employed in a clerical position for relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "sprain of sacrum; protruding disc L4-L5, lumbar; postlaminectomy syndrome NOS," and is assigned claim number 671200.
 {¶ 7} 2. On January 14, 2004, claimant was examined by Charles B. May, D.O., for "evaluation and treatment" of her industrial injury. On January 15, 2004, Dr. May wrote:
 Sue Moenter presented to my office on 01/14/04 for evaluation and treatment of injuries sustained at work on 01/17/79. * * *
 Currently, Ms. Moenter complains of low back pain which is chronic. She has pain into her right hip and she has right leg pain to her right calf with electric type dysesthesias. * * *
 * * *
 X-rays were taken in this office of the lumbar spine with standing lateral flexion and extension views. There was marked degenerative joint disease of both L4-5 and L5-S1 without evidence of instability.
 Ms. Moenter continues to suffer from chronic lumbar spine pain as a direct and proximate result of a post lumbar laminectomy syndrome 722.80. * * * She would like to have *Page 6 
something done for her ongoing back pain if possible. Certainly she may be a candidate for a lumbar fusion. * * *
 {¶ 8} 3. On March 24, 2004, Dr. May wrote to claimant's counsel as follows:
 * * * We were able to obtain an authorization for lumbar MRI scan, which was completed on 02/17/04, * * * as well as an EMG, which was completed on 02/12/04 * * *. The EMG [does] show the chronic and permanent right L5 radiculopathy. The MRI scan reveals postoperative changes at L4-L5 with an ongoing broad posterior and mixed spondylitic protrusion with scarring affecting the nerve roots. There was some other minor disc changes not felt to be clinically significant at this time.
 As you know, Ms. Mentor [sic] suffers from chronic and severe pain in her lumbar spine as well as radicular symptoms in the right leg and does objectively have radiculopathy on physical examination as well as EMG. She does suffer from post-lumbar laminectomy syndrome, and at this time is unable to continue working. Based upon the allowed conditions on this claim and my recent physical evaluation of Ms. Mentor [sic], and based upon her most upto-date diagnostic studies, it is my medical opinion that Sue Mentor [sic] is permanently and totally disabled from any form of substantial gainful employment as a direct and proximate result of the allowed injuries in this claim.
 {¶ 9} 4. On May 6, 2004, claimant filed an application for PTD compensation.
 {¶ 10} 5. The PTD application prompted relator to have claimant examined on June 17, 2004, by Matthew D. McDaniel, M.D., who wrote:
 [One] Based on my examination today, the disability as related solely to the allowed conditions involves pain from the allowed post-laminectomy syndrome. There is no evidence of a sacral sprain and the bulging disc has been corrected surgically with no EMG evidence of an active radiculopathy. The majority of Ms. Moenter's ongoing complaints, findings and disability are consistent with a nonallowed degenerative condition in the lumbar spine.
 * * * *Page 7 
 [Three] Ms. Moenter would be capable of returning to remunerative employment as related to the allowed conditions of this claim. Restrictions would involve no lifting over 20 pounds, no repetitive bending, limited kneeling and squatting, and limited pushing and pulling. These restrictions are likely permanent.
 [Four] In my professional opinion, Ms. Moenter is not permanently and totally disabled from all forms of remunerative employment as a direct and sole result of the allowed conditions of this claim. * * *
 * * * It is likely that her current complaints, findings, and disability are at least partly due to non-allowed conditions. In my professional opinion, Ms. Mentor [sic] would be able to sustain remunerative employment as related solely to the allowed conditions of this claim.
 {¶ 11} 6. The application also prompted the commission to have claimant examined on July 15, 2004 by orthopedist James Rutherford, M.D., who issued a four page narrative report dated July 20, 2004.
 {¶ 12} 7. The first page of Dr. Rutherford's report presents the usual "heading" information found on medical reports to the commission. In the heading, Dr. Rutherford correctly lists the date of injury and the claim allowances.
 {¶ 13} 8. Dr. Rutherford's report is then divided into five sections captioned respectively as "Medical History," "Medical Records," "Physical Examination," "Discussion" and "Conclusions Medical Opinions."
 {¶ 14} 9. Under the "Medical History" section, Dr. Rutherford details claimant's medical history relating to both the industrial injury and other nonallowed conditions. Initially, he details claimant's surgical history relating to her industrial injury and describes the industrial injury's impact on her ability to work: *Page 8 
 * * * She was in the parking lot going to her car after work when she slipped and fell on the right buttocks. At the time of the injury she was off work for a couple of weeks but then she could not sit for 8 hours and had to quit that job. She subsequently in 1983 had surgery on her back which involved a lumbar laminectomy and excisions of a herniated disc at L4-5. She then had a second surgery in June of 1985 which was a laminectomy and excision of recurrent extruded disc at L4-5. She then was able to return to a part time job. She then returned to schooling for an Associates Nursing Degree. Since 1990 she had worked as a staff nurse at the Columbus Developmental Center doing mostly supervisory work. She stated that her job involved mostly handing out pills in the morning and then doing a lot of paper work. Ms. Moenter had a third surgery on her back on 2/15/94. This included a bilateral laminectomy and partial medial facetectomy and excision of extruded disc at L4-5. She was off work for one year at that time and did home health work for about two years. * * *
 {¶ 15} Dr. Rutherford then notes some of claimant's nonallowed medical problems:
 * * * Ms. Moenter also has had two surgeries on her neck. The first surgery on her neck was in 1993. She then had a second laminectomy and fusion on her neck on 1/9/03. She stated that she has two levels of her cervical spine which are fused. She also had a cardiac stent inserted on 10/19/03. She stated that she could not do her cardiac rehab program because of the recurrence of her back pain. She last worked on 3/15/04.
 {¶ 16} After noting that claimant's treating physician is Dr. May, Dr. Rutherford then relates what claimant told him about her medical condition at the medical examination:
 * * * She states that she has pain in her lower back that radiates to the right hip and both legs. She has difficulty getting up and out of chairs. She uses a cane recently. She has difficulty doing such things as cooking or any prolonged standing and she uses a shower chair. She states that she cannot sit very long and she gets increased back pain when she gets up out of a chair if she has been sitting very long. She uses a recliner a lot and she lays on the couch a lot. *Page 9 
She states that she does drive some. She stated that she can walk about a half a block. She stated that she then develops increased pain in her back and both of her legs with the right side being more involved than the left. She stated that she can lift an carry about 10 lbs. She denied any bladder problems. She denied any numbness in her legs. She stated that she has had a carpal tunnel release of her right wrist. She stated that she sleeps about one hour at a time.
 {¶ 17} 10. Under the "Medical Records" section of Dr. Rutherford's report, he summarizes Dr. May's report of May 24, 2004, and also discusses Ohio Public Employee's Retirement System ("PERS") forms that Dr. May completed:
 * * * In forms filled out for her PERS Disability, Dr. May indicated that Ms. Moenter had an EMG which showed a right L5 radiculopathy and a lumbar MRI which showed multi-level disc protrusions with a right L4-5 spondylitic protrusion. He noted that she also had post lumbar laminectomy syndrome and a right L5 lumbar radiculopathy and degenerative joint disease of the lumbar spine. * * *
 {¶ 18} He then details information contained on the commission's Statement of Facts:[1]
 * * * The Statement of Facts indicates that on 2/17/04 that an MRI of the lumbar without contrast described a L4-5 right hemilaminectomy with a shallow broad posterior mixed spondylotic protrusion with mild paridiscal/anterior extradural scar; the scar effacing ventral dural sac and bilateral L5 nerve roots. L2-3 shows shallow posterior disc protrusion with left eccentricity encroaching upon the ventral dural sac. The MRI of the lumbar spine done on 2/3/04 without contrast described an L4-5 right hemilaminectomy. There was shallow broad protrusion mixed spondylotic protrusion effacing the ventral dural sac. At L2-3 there was a shallow posterior disc protrusion with left eccentricity encroaching upon ventral dural sac. There was mild spinal stenosis at L23 and L3-4. An EMG and NCS done on 2/12/04, was read as *Page 10 
showing evidence of an old right L5 radiculopathy. There were no acute findings noted other than spasm.
 {¶ 19} Finally, under the "Medical Records" section of his report, Dr. Rutherford summarizes the June 17, 2004 report of Dr. McDaniel.
 {¶ 20} 11. Under the "Physical Examination" section of his report, Dr. Rutherford describes his clinical findings during his examination of July 15, 2004. The "Physical Examination" section is divided into two paragraphs. The first paragraph under that section reads:
 Ms. Sue Moenter is 54 years old. She is 5'2' tall and weighs 225 lbs. She had a slight forward list when standing and in ambulating with a cane. She had difficulty getting up from a chair. She was able to stand on her toes and heels satisfactorily and she did only fair when walking in a tandem fashion. She was able to do only 40% of a deep knee bend. On range of motion of her lower back she had flexion of 40 degrees with 60 being normal. She had 0 degrees of extension, lateral flexion of 15 degrees to each side. She had tenderness over the right lower lumbar area with radiation to the right buttocks and the right posterior thigh and the right calf. She had some radiation to the left posterior thigh. Motor function in the lower extremities was intact on manual muscle testing. Sensory examination of the lower extremities was intact. Deep tendon reflexes were 1+ at each knee and there is only a trace reflex at each ankle. The calf circumferences were 17 ¾ inches on the right and 18 inches on the left. Straight leg raising was 80 degrees on each side in both the sitting and the supine positions. She denied any bladder problems.
 {¶ 21} The second paragraph under that section relates to Dr. Rutherford's examination of claimant's neck and her upper extremities.
 {¶ 22} 12. Under the "Discussion" section of his report, Dr. Rutherford wrote:
 It is my medical opinion that Ms. Sue Moenter has a 10% permanent partial impairment of the whole person as a result of Claim No. 671200-22. This is based on a DRE Category *Page 11 
III impairment of the lumbosacral spine with the reference being the AMA Guides to the Evaluation of Permanent Impairment, 4th
Edition and Table 72 on Page 110.
 As a result of the above described orthopedic impairments, it is my medical opinion that Ms. Moenter is limited to sitting only four hours out of an eight hour day. She can only stand and walk one hour out of an eight hour day. She can lift 10 lbs or less occasionally. She can do no climbing or crawling or stooping or bending below knee level for work activity. She can drive for her own transportation but she cannot drive heavy equipment. She has satisfactory use of her upper extremities. Ms. Moenter stands and walks with a slight forward list and she requires a cane for ambulation. She has difficulty getting up and down out of a chair. It is my medical opinion that the difficulty that she has with any prolonged sitting or standing and walking is related to her industrial claim allowances. It is my medical opinion that due to the industrial claim allowances of Claim No. 671200-22, that Ms. Sue Moenter is not capable of physical work activity. It is my medical opinion that due to the claim allowances of Claim No. 671200-22 that Ms. Moenter could not sustain a functional position for sitting or standing for sustained remunerative employment.
 {¶ 23} 13. Under the "Conclusions Medical Opinions" section of his report, Dr. Rutherford wrote:
 The opinions are given with a reasonable degree of medical probability. The AMA Guides to the Evaluation of Permanent Impairment, 4th edition is used as reference.
 [One] It is my medical opinion that Ms. Sue Moenter has reached MMI for the claim allowances of Claim No. 671200-22.
 [Two] It is my medical opinion that Ms. Moenter has a 10% permanent partial impairment of the whole person based on the orthopedic claim allowances of Claim No. 671200-22. This is based on a DRE Category III impairment of the lumbosacral spine with the reference being Table 72 on Page 110. *Page 12 
 [Three] Based on the orthopedic claim allowances of Claim No. 671200-22, and the functional limitations related to those claim allowances, it is my medical opinion that Ms. Sue Moenter is not capable of physical work activity and I have indicated this on the Physical Strength Rating Form.
 {¶ 24} 14. On July 15, 2004, Dr. Rutherford filled out a physical strength rating form. On the form, Dr. Rutherford indicated by checkmark that claimant "is not capable of physical work activity."
 {¶ 25} 15. On August 16, 2004, relator moved to depose Dr. Rutherford.
 {¶ 26} 16. Following an October 26, 2004 hearing, a staff hearing officer ("SHO") issued an order denying relator's motion to depose. The SHO's order explains:
 Following review of the claim file and all relevant evidence, it is the finding of the Staff Hearing Officer that the Employer's motion is unreasonable because it raises the issues that Dr. Rutherford considered non-allowed conditions in reaching his ultimate opinion and that Dr. Rutherford's report is internally inconsistent regarding the claimant's residual functional capacity. Pursuant to State ex rel. Cox v. Greyhound Food Mgt. Inc., 95 Ohio St.3d 353, 2002-Ohio 2335, the Staff Hearing Officer finds that issues such as these can be addressed by the hearing officer at hearing. Therefore, it is the order of the Staff Hearing Officer that the Employer's motion is denied. * * *
 {¶ 27} 17. Following a February 2, 2005 hearing, an SHO issued an order granting a PTD award. The SHO's order states:
 Permanent and total disability compensation is hereby awarded from 01/15/2004[.] * * *
 This order is based particularly upon the reports of Dr. May and Dr. Rutherford.
 Claimant was referred by the Industrial Commission to a 07/15/2004 examination by James Rutherford, M.D., an orthopedist. Dr. Rutherford thoroughly reviewed the medical records of the injured worker and explicitly concluded that, *Page 13 
"due to the claim allowances of claim number 671200-22 that Mrs. Moenter could not sustain a functional position for sitting or standing for sustained remunerative employment." The Staff Hearing Officer adopts this conclusion contained in Dr. Rutherford's report. Such a finding mandates and [sic] award of permanent total disability compensation without consideration of the [State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167] factors.
 All physician's [sic] who have examined the claimant find that, when all the impairment to her lower back is considered, she is permanently and totally impaired from engaging in sustained remunerative employment. The employer has presented medical evidence, and argues, that this impairment is, in significant part, attributable to unallowed degenerative processes. After reviewing the medical record, the independent examiner found to the contrary, that is, that the claimant's disability is due to the allowed conditions. After independent review of the medical evidence, the Staff Hearing Officer finds that this conclusion is the best supported one.
 The start date of the award is established as 01/15/2004, the date of the report of Dr. May submitted in support of the application.
 {¶ 28} 18. On April 8, 2005, relator moved for reconsideration of the SHO's order of February 2, 2005.
 {¶ 29} 19. On April 22, 2005, the commission issued an interlocutory order stating that relator's request for reconsideration would be set for hearing.
 {¶ 30} 20. Following a May 26, 2005 hearing, the commission issued an order stating:
 * * * [I]t is the decision of the Industrial Commission that the employer's request for reconsideration, filed 04/08/2005, is granted and the order of the Staff Hearing Officer, dated 02/02/2005, is vacated.
 It is the finding of the Commission that the employer has met his burden of proving that the Staff Hearing Officer order, *Page 14 
dated 02/02/2005 contains a clear error of such character that remedial action would clearly follow. Specifically, the order of the Staff Hearing Officer, dated 02/02/2005, states that "all" physicians who have examined the injured worker have found that when all her impairment to the low back is considered, she is permanently and totally disabled. This is an incorrect statement. Dr. McDaniel, who examined the injured worker on behalf of the employer, stated that the injured worker, as related to the allowed conditions in the claim, is capable of returning to sustained remunerative employment. Because the order of 02/02/2005 contains this clear mistake of fact, it is fatally flawed. Therefore, the Commission invokes the authority of continuing jurisdiction, pursuant to R.C. 4123.52 and the case law of State ex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454; and State ex rel. Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320 in order to correct this clear error. It is the finding of the Commission that this claim has been allowed for: sprain of sacrum; protruding disc L4-L5, lumbar; post laminectomy syndrome nos.
 After full consideration of the issue it is the order of the Commission that the IC-2 application, filed 05/06/2004, is granted to the following extent:
 Permanent total disability compensation is hereby awarded from 01/15/2004 and to continue without suspension unless future facts or circumstances should warrant the stopping of the award; and that payment be made pursuant to R.C. 4123.58(A).
 This order is based on the 07/20/2004 report of Dr. Rutherford.
 Dr. Rutherford examined the injured worker on 07/15/2004. He concluded that the injured worker was not capable of physical work activity related to the allowed conditions in the claim. It is clear from a review of Dr. Rutherford's report that he was aware that the injured worker had a degenerative condition of the spine and that this condition was not recognized as a part of the claim. Dr. Rutherford clearly states that his opinion is limited to the allowed conditions in the claim. *Page 15 
 Dr. Rutherford lists specific limitations that the injured worker has related to the allowed conditions in the claim. Some of the limitations listed by Dr. Rutherford are consistent with a finding that the injured worker could perform some aspect of sedentary work, but Dr. Rutherford also stated that the injured worker "could not sustain a functional position for sitting or standing for sustained remunerative employment." Accordingly, there is no inconsistency found in the doctor's description of the injured worker's limitations and his conclusion that she is not capable of sustained remunerative employment.
 Because the injured worker is found to be prevented from working based on the allowed conditions in the claim, further consideration of the injured worker's vocational factors is unnecessary.
 Dr. May's 03/24/2004 and 01/15/2004 reports are relied upon only to the extent of commencing the award of permanent total disability benefits as of 01/15/2004.
 {¶ 31} 21. On October 24, 2005, relator, Sears Roebuck Company, filed this original action.
Conclusions of Law:
 {¶ 32} Three issues are presented: (1) must the PTD award be vacated because, in rendering his opinion that claimant is not capable of physical work activity, Dr. Rutherford allegedly relied in part on nonallowed conditions? (2) Can the commission rely upon one or both of Dr. May's reports to commence the award of PTD compensation? and (3) did the commission abuse its discretion in denying relator's motion to depose Dr. Rutherford?
 {¶ 33} The magistrate finds: (1) because Dr. Rutherford did not rely on nonallowed conditions to support his opinion that claimant is not capable of physical work activity, the PTD award must not be vacated; (2) the commission can rely upon Dr. May's March 24, *Page 16 
2004 report to start the PTD award as of March 24, 2004, but the commission cannot rely upon Dr. May's January 15, 2004 report to start the PTD award as of January 15, 2004; and (3) the commission did not abuse its discretion in denying relator's motion to depose Dr. Rutherford.
 {¶ 34} Accordingly, as more fully explained below, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to amend its May 26, 2005 order awarding PTD compensation so that PTD compensation is commenced on March 24, 2004 rather than January 15, 2004.
 {¶ 35} Turning to the first issue, nonallowed conditions may never be used to advance or defeat a claim for PTD compensation. State ex rel.Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452.
 {¶ 36} The mere presence of a nonallowed condition in a claim for compensation does not in itself destroy the compensability of the claim, but the claimant must meet his burden of showing that one or more allowed conditions of the claim produces PTD independently of any nonallowed conditions. State ex rel. Bradley v. Indus. Comm. (1997),77 Ohio St.3d 239, 242.
 {¶ 37} Equivocal medical opinions are not evidence. State ex rel.Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id.
 {¶ 38} Moreover, a doctor's report can be so internally inconsistent that it cannot constitute some evidence supporting the commission's decision. State ex rel. Lopez v. *Page 17 Indus. Comm. (1994), 69 Ohio St.3d 445, 449; State ex rel. Taylor v.Indus. Comm. (1995), 71 Ohio St.3d 582.
 {¶ 39} Dr. Rutherford introduces the second paragraph under the "Discussion" section of his report with the clause "[a]s a result of the above described orthopedic impairments." According to relator, because Dr. Rutherford allegedly fails to specify which "orthopedic impairments" he considered, his opinion that claimant is not capable of physical work activity is rendered equivocal as to whether it is based exclusively upon allowed conditions of the claim. (Relator's brief, at 9; relator's reply brief, at 3.) The magistrate disagrees.
 {¶ 40} In the magistrate's view, the commission could logically conclude from a reading of the report that "orthopedic impairments" in the second paragraph under "Discussion" refers to the paragraph immediately above it wherein Dr. Rutherford opines that claimant has a ten percent permanent partial impairment of the lumbosacral spine in claim number 671200-22.
 {¶ 41} Clearly, the commission was not required to read Dr. Rutherford's report in a manner that creates equivocation. Relator's reading of the report simply ignores the sequencing of the paragraphs of the report.
 {¶ 42} Thus, contrary to relator's argument, Dr. Rutherford's reference to "orthopedic impairments" can be logically viewed as a reference to the allowed conditions of the claim.
 {¶ 43} Relator further argues that, in the "Discussion" section of the report, Dr. Rutherford indicates that claimant is capable of sedentary work when he states: *Page 18 
 * * * [I]t is my medical opinion that Ms. Moenter is limited to sitting only four hours out of an eight hour day. She can only stand and walk one hour out of an eight hour day. She can lift 10 lbs or less occasionally. * * *
 {¶ 44} According to relator, the above-quoted portion of the report is inconsistent with Dr. Rutherford's opinion that claimant is not capable of physical work activity. Again, the magistrate disagrees.
 {¶ 45} In fact, the commission itself addressed relator's argument in its May 26, 2005 order when the commission explains:
 Dr. Rutherford lists specific limitations that the injured worker has related to the allowed conditions in the claim. Some of the limitations listed by Dr. Rutherford are consistent with a finding that the injured worker could perform some aspect of sedentary work, but Dr. Rutherford also stated that the injured worker "could not sustain a functional position for sitting or standing for sustained remunerative employment." Accordingly, there is no inconsistency found in the doctor's description of the injured worker's limitations and his conclusion that she is not capable of sustained remunerative employment.
 {¶ 46} The commission's interpretation of Dr. Rutherford's report is clearly supported by language of the report. Even if Dr. Rutherford's report is subject to the interpretation that relator wishes to give it, the commission was not required to give it an equivocal or inconsistent interpretation.
 {¶ 47} Dr. Rutherford explained that claimant "could not sustain a functional position for sitting or standing for sustained remunerative employment." He thus qualified his earlier remark in the same paragraph that claimant is "limited to sitting only four hours out of an eight hour day."
 {¶ 48} It is important to note that Dr. Rutherford never said that claimant can sit without interruption for four hours per day. He did imply that she cannot sit for very long without a change in position when he said that she "could not sustain a functional position for sitting * * * for sustained remunerative employment." *Page 19 
 {¶ 49} Dr. Rutherford's opinion that claimant cannot sustain a functional sitting position is consistent with claimant's self reporting:
 * * * She states that she cannot sit very long and she gets increased back pain when she gets up out of a chair if she has been sitting very long. She uses a recliner a lot and she lays on the couch a lot. * * *
 {¶ 50} If sitting four hours out of an eight hour day requires repeated interruptions in the sitting position because of the industrial injury, Dr. Rutherford could conclude that type of sitting ability does not permit sustained remunerative employment.
 {¶ 51} Given the above analysis, the commission was not required to give Dr. Rutherford's report the equivocal reading that relator wishes to give it. See State ex rel. Owens Corning Fiberglass v. Indus.Comm., Franklin App. No. 03AP-684, 2004-Ohio3841 (this court analyzed a similar issue with respect to one of Dr. Rutherford's reports).
 {¶ 52} Relator further argues that Dr. Rutherford's report must be viewed as equivocal because he indicated on claimant's application for a PERS disability retirement that her disabling conditions are degenerative disc disease and post-lumbar laminectomy syndrome. However, it is not inconceivable that claimant's disability is caused by a combination of allowed and nonallowed conditions as well as independently by an allowed condition. *Page 20 
 {¶ 53} Thus, the magistrate concludes that the commission did not abuse its discretion in relying upon Dr. Rutherford's report to support the PTD award.
 {¶ 54} Turning to the second issue, the commission commenced the PTD award as of January 15, 2004 based upon Dr. May's March 24 and January 15, 2004 reports.
 {¶ 55} Clearly, Dr. May did not opine that claimant is permanently and totally disabled due to the industrial injury until March 24, 2004. In his January 15, 2004 report, Dr. May states that claimant "continues to suffer from chronic lumbar spine pain as a direct and proximate result of a post lumbar laminectomy syndrome." But he did not opine as to disability on January 15, 2004. Moreover, in his March 24, 2004 report, Dr. May did not retrospectively opine that claimant was permanently and totally disabled as of the date of his January 14, 2004 examination. Thus, there is no evidence from Dr. May that claimant was permanently and totally disabled prior to March 24, 2004. Clearly, the commission cannot commence the PTD award as of January 15, 2004 based upon Dr. May's reports.
 {¶ 56} However, notwithstanding relator's claim here, Dr. May's March 24, 2004 report does provide an evidentiary basis for commencing the PTD award as of March 24, 2004.
 {¶ 57} Relator claims that Dr. May's March 24 2004 report must be read as presenting a PTD opinion based in part upon nonallowed conditions. In support of this claim, relator points out that Dr. May notes in his March 24, 2004 report that claimant has "right L5 radiculopathy" and he notes in his January 15, 2004 report that claimant has "marked degenerative joint disease of both L4-5 and L5-S1 without evidence of instability." Asserting that degenerative joint disease and right L5 radiculopathy are *Page 21 
nonallowed conditions, relator concludes that Dr. May's March 24, 2004 report presents a PTD opinion based in part upon nonallowed conditions. The magistrate disagrees that Dr. May's March 24, 2004 PTD opinion must be viewed as one based in part on nonallowed conditions.
 {¶ 58} In his March 24, 2004 report, Dr. May correctly lists the allowed conditions of the claim. His report concludes:
 * * * Based upon the allowed conditions on this claim and my recent physical evaluation of Ms. Mentor [sic], and based upon her most up-to-date diagnostic studies, it is my medical opinion that Sue Mentor [sic] is permanently and totally disabled from any form of substantial gainful employment as a direct and proximate result of the allowed injuries in this claim.
 {¶ 59} Dr. May could not have spoken more plainly. He made it clear that his PTD opinion is based upon the allowed conditions which he correctly lists in his report.
 {¶ 60} Whether or not "right L5 radiculopathy" must be viewed as a nonallowed condition, that Dr. May discussed nonallowed conditions in his reports does not automatically destroy the validity of his opinion that PTD is produced by the allowed conditions of the claim.
 {¶ 61} Accordingly, the magistrate concludes that the commission abused its discretion by commencing the PTD award as of January 15, 2004 rather than March 24, 2004.
 {¶ 62} The third issue, as previously noted, is whether the commission abused its discretion in denying relator's motion to depose Dr. Rutherford.
 {¶ 63} R.C. 4123.09 provides that the commission "may cause depositions of witnesses * * * to be taken." *Page 22 
 {¶ 64} Supplementing the statute, former Ohio Adm. Code 4121-3-09(A)(6) set forth a procedure for obtaining depositions of a commission or bureau physician. Deposition requests were evaluated under a reasonableness standard. Former Ohio Adm. Code 4121-3-09(A)(6)(c) and (d); State ex rel. Cox v. Greyhound Food Mgt., Inc., 95 Ohio St.3d 353,355, 2002-Ohio-2335.
 Former Ohio Adm. Code 4121-3-09(A)(6)(d) stated:
 The factors to be considered by the hearing administrator when determining the reasonableness of the request for deposition and interrogatories include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay. * * *
 {¶ 65} After extensively discussing the deficiencies of the "substantial disparity" and "exclusive reliance" criteria, theCox court concluded that the former code's first two criteria, in most cases, were not very useful in determining the reasonableness of a deposition request. Cox, at 356. The court stated that, fortunately, the former code implies that other factors may be considered as circumstances dictate. In Cox, the court relied upon two other criteria to judge the reasonableness of the deposition request: (1) does a defect exist that can be cured by deposition; and (2) is the disability hearing an equally reasonable option for resolution?
 {¶ 66} Presumably, the Cox case prompted the commission to amend Ohio Adm. Code 4121-3-09 effective April 1, 2004. The provision of former Ohio Adm. Code 4121-3-09(A)(6)(d), quoted above, was deleted. *Page 23 
 {¶ 67} Currently, Ohio Adm. Code 4121-3-09(A)(7)(c) provides that the hearing administrator shall determine whether the deposition request "is a reasonable one." Currently, Ohio Adm. Code 4121-3-09(A)(7)(d), effective April 4, 2004, provides:
 * * * [W]hen determining the reasonableness of the request for deposition or interrogatories the hearing administrator shall consider whether the alleged defect or potential problem raised by the applicant can be adequately addressed or resolved by the claims examiner, hearing administrator, or hearing officer through the adjudicatory process within the commission or the claims process within the bureau of workers' compensation.
 {¶ 68} Notably, the "substantial disparity" criteria was removed from the commission's rules effective April 1, 2004. Relator's motion to depose Dr. Rutherford was filed August 16, 2004, after the amendment of the rule.
 {¶ 69} However, the new rule does not appear to preclude a party from claiming substantial disparity as a basis for a deposition request under the reasonableness standard.
 {¶ 70} Thus, the magistrate shall not presume that the commission's amendment of its deposition rule automatically precludes a party from arguing substantial disparity.
 {¶ 71} In relator's motion to depose Dr. Rutherford, relator claimed that his report "appears to consider non allowed conditions and represents a substantial disparity from the impairment opinion of Dr. Mat[t]hew McDaniel."
 {¶ 72} The SHO's order of October 26, 2004 fails to address relator's substantial disparity claim, but it does address relator's claim that Dr. Rutherford's report appears to consider nonallowed conditions. Relying on Cox, the SHO found that relator's request to *Page 24 
depose was "unreasonable" because the issues can be addressed at the hearing on the merits of the PTD application.
 In Cox, the court criticized the "substantial-disparity" criteria:
 * * * [T]he substantial-disparity criterion often does not recognize the fundamentals of the hearing process. Disability hearings occur precisely because there is a disparity in the medical evidence. Unanimity does not usually generate a hearing. To the contrary, the need for a hearing generally arises when one doctor says that a claimant can work and the other disagrees. They are completely opposite opinions and that is why there is a hearing — to debate a disputed report's strengths and weaknesses. Once the hearing is concluded, the commission can accept the disputed report or reject it as unpersuasive.
Id. at ¶ 19. (Emphasis sic.)
 {¶ 73} Here, relator's argument that a substantial disparity exists between the reports of Drs. Rutherford and McDaniel's has merit. Indeed, Dr. Rutherford ultimately concludes that claimant "is not capable of physical work activity," while Dr. McDaniel concludes that claimant "would be able to sustain remunerative employment as related solely to the allowed conditions of the claim."
 {¶ 74} However, that a substantial disparity exists between the reports does not give relator a clear legal right to depose Dr. Rutherford. As the Cox court explains, that is why there is a hearing. While relator did point out the substantial disparity between the two reports, relator has not made an argument, either before the commission or before this court, as to why the hearing on the merits of the PTD application fails to provide an equally reasonable option for resolution of the issues presented by the two disparate reports. Accordingly, substantial disparity between the two reports does not compel the conclusion that the commission abused its discretion in denying the motion to depose. *Page 25 
 {¶ 75} As previously explained above, there is no defect in Dr. Rutherford's report with respect to relator's claim that Dr. Rutherford considered nonallowed conditions in rendering his opinion that claimant is not capable of physical work activity. That being the case, the commission could not have erred in denying relator's request for the deposition. See State ex rel. Englemon v. Queen City Barrel Co., Franklin App. No. 05AP-46, 2005-Ohio-5651.
 {¶ 76} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to adjust the date that the PTD award commences to March 24, 2004 based upon its stated reliance upon Dr. May's March 24, 2004 report.
[1] The commission's Statement of Facts was not submitted to the Stipulation of Evidence filed with this court. *Page 1