[Cite as *Old Dominion Freight Line, Inc. v. Indus. Comm.*, 2014-Ohio-2278.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.     :
Old Dominion Freight Line, Inc.,

             :

    Relator,

             :

v.              No. 11AP-350

             :

Industrial Commission of Ohio    (REGULAR CALENDAR)
and Robert L. Mason,      :

    Respondents.    :

---

D E C I S I O N

Rendered on May 29, 2014

---

*Eastman & Smith Ltd., Mark A. Shaw* and *Melissa A. Ebel*, for relator.

*Michael DeWine*, Attorney General, and *Eric Tarbox*, for respondent Industrial Commission of Ohio.

*Connor, Evans & Hafenstein, LLP, Nicole E. Rager* and *Katie W. Kimmet*, for respondent Robert L. Mason.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

O'GRADY, J.

{¶ 1} Relator, Old Dominion Freight Line, Inc. ("Old Dominion"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that awarded permanent total disability ("PTD") compensation to respondent Robert L. Mason ("claimant") and enter an order denying said compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision on December 16, 2011. The magistrate recommended this court grant Old Dominion's request for a writ of mandamus. The commission and claimant filed objections to the magistrate's decision. We sustained the objections and remanded the matter to the magistrate to determine the arguments that remained. *State ex rel. Old Dominion Freight Line, Inc. v. Indus. Comm.*, 10th Dist. No. 11AP-350, 2012-Ohio-2403, ¶ 15-16 ("*Old Dominion I*"). On remand, the magistrate issued a decision on March 12, 2014, appended hereto, including findings of fact and conclusions of law. The magistrate recommended we deny relator's request for a writ mandamus, in essence, concluding Old Dominion did not have a clear legal right to the requested relief and the commission did not have a corresponding clear legal duty to provide the requested relief.

{¶ 3} None of the parties have filed objections to the March 12, 2014 findings of fact, and, after an independent review of the record, we adopt those findings as our own with the following exceptions. The magistrate's finding of fact in paragraph 21 erroneously refers to a "September 17, 2009 hearing" when the referenced hearing was held on December 17, 2009. Additionally, the magistrate's finding of fact in paragraph 33 states on May 31, 2012, this court "held that [Old Dominion] was not prejudiced when the commission submitted the supplemental evidence to its doctors after their examinations had been performed." This finding lacks precision because it omits the fact that the commission never submitted one piece of evidence, i.e., Dr. Richard Clary's report to Dr. William R. Fitz. *Old Dominion I* at ¶ 11. However, we also found no prejudice to Old Dominion due to this failure on the commission's part. *Id.* at ¶ 14. We modify the magistrate's decision to correct these errors.

{¶ 4} Next, Old Dominion presents the following objections to the magistrate's March 12, 2014 conclusions of law:

> **(1) The Magistrate erred by finding that it was reasonable for the Industrial Commission of Ohio to deny Old Dominion's requests to depose Drs. Fitz and Malinky.**
>
> **(2) The Magistrate erred by finding that the Staff Hearing Officer did not abuse his discretion in noting**

**the reports of Drs. Ward, May, and Howard when he evaluated the creditability of the reports of Drs. Fitz and Malinky.**

{¶ 5} To be entitled to a writ of mandamus, relator must demonstrate a clear legal right to the requested relief, a corresponding clear legal duty on the part of the respondent to provide the requested relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Ervin v. Barker*, 136 Ohio St.3d 160, 2013-Ohio-3171, ¶ 9.

{¶ 6} In its first objection, Old Dominion contends the magistrate erred by finding it was reasonable for the commission to deny relator's requests to depose Drs. Fitz and John M. Malinky, who each examined claimant at the commission's request.

{¶ 7} R.C. 4123.09 provides that the commission "may cause depositions of witnesses * * * to be taken in the manner prescribed by law for the taking of depositions in civil actions in the court of common pleas." In addition, former Ohio Adm.Code 4121-3-09(A)(7)(c)[1] provided that if the hearing administrator finds a request to take the oral deposition of a commission physician who has examined an injured or disabled worker "is a reasonable one, the hearing administrator shall issue a compliance letter that will set forth the responsibilities of the party that makes the request." Former Ohio Adm. Code 4121-3-09(A)(7)(d) further provided that "when determining the reasonableness of the request for deposition * * * the hearing administrator shall consider whether the alleged defect or potential problem raised by the applicant can be adequately addressed or resolved by the claims examiner, hearing administrator, or hearing officer through the adjudicatory process within the commission."

{¶ 8} Old Dominion claims it made requests to take the depositions of Drs. Fitz and Malinky to correct the commission's error in not providing those doctors with medical evidence Old Dominion timely filed with the commission, i.e., the reports of Drs. Clary, Oscar Sterle, and Michael A. Murphy. Old Dominion contends in denying its requests, the staff hearing officer ("SHO") incorrectly suggested it was Old Dominion's fault that Drs. Fitz and Malinky did not receive the reports. Thus, Old Dominion argues

---

[1] At the time of relator's November 2009 request to take the depositions of Drs. Fitz and Malinky, the quoted provisions of Ohio Adm.Code 4121-3-09 appeared in subsection (A)(7) instead of the current (A)(8). *See* former Ohio Adm.Code 4121-3-09(A)(7), effective June 1, 2008, amended August 19, 2013.

the commission erroneously relied on inaccurate information to deny the deposition requests.

{¶ 9} The magistrate found the requests to depose Drs. Fitz and Malinky unreasonable and properly denied because, according to the magistrate, we previously found Old Dominion "suffered no prejudice when the commission submitted [Old Dominion's] physicians' reports to Drs. Fitz and Malinky after the examinations were performed and the initial reports were rendered." (Attached March 12, 2014 Magistrate's Decision, at ¶ 42.) Old Dominion complains this reasoning is flawed because the commission denied the deposition requests before it submitted any of the reports to Drs. Fitz and Malinky. According to Old Dominion, "the fact that Drs. Fitz and Malinky were ultimately provided a copy of Old Dominion's medical reports had no bearing on the [c]ommission's decision to deny Old Dominion's request for deposition." (Relator's Objections, at 5.)

{¶ 10} However, we agree with the main thrust of the magistrate's decision. Even if the stated rationale for denying the deposition requests was flawed, ultimately, the requests were unreasonable and properly denied. As the SHO suggested in denying the request to depose Dr. Malinky, the alleged defect or potential problem raised by Old Dominion did not require depositions for resolution. Rather, the commission could and did resolve the situation by submitting the majority of Old Dominion's medical evidence to Drs. Fitz and Malinky after their examinations of claimant and having them issue addendum reports based on that evidence. As the magistrate aptly observed, this court already determined the timing of these submissions did not prejudice Old Dominion. *Old Dominion I* at ¶ 11.

{¶ 11} In his conclusions of law, the magistrate did not address the fact that the commission failed to ever submit Dr. Clary's psychological report to Dr. Fitz. But, again, this court previously determined the commission's failure in this respect did not prejudice Old Dominion given the lack of evidence that Dr. Clary's report would have had any effect on Dr. Fitz's medical examination. *Old Dominion I* at ¶ 11-16. We observed:

> Dr. Fitz examined claimant with regard to his ability to sustain remunerative employment based upon his allowed physical conditions. There is no indication in the record that Dr. Fitz would have been competent to render any opinion

> related to claimant's psychological conditions, and Dr. Clary's
> report makes no mention of any physical findings that might
> have impacted Dr. Fitz's report.

*Old Dominion I* at ¶ 14. Therefore, the commission's failure to submit Dr. Clary's report to Dr. Fitz was not a defect or problem that required resolution via the deposition of Dr. Fitz. We modify the magistrate's conclusions of law to incorporate this conclusion.

{¶ 12} Because Old Dominion's requests for depositions were unreasonable, the magistrate correctly determined the commission's decision to deny them was reasonable. We overrule the first objection.

{¶ 13} In its second objection, Old Dominion contends the magistrate erred by finding the SHO did not abuse his discretion in noting the reports of Drs. Richard M. Ward, Charles B. May, and Lee Howard when he evaluated the credibility of the reports of Drs. Fitz and Malinky. At issue is the following language in the SHO's order awarding PTD compensation:

> [T]he Staff Hearing Officer relies upon the independent
> medical examinations and evaluations performed at the
> direct[ion] of the Industrial Commission: William R. Fitz,
> M.D., who examined with respects to the allowed physical
> injuries, and John M. Malinky, Ph.D., who examined with
> respects to the allowed psychological conditions. In evaluating
> the credibility of these reports, the Staff Hearing Officer
> particularly notes the 01/28/2008 report of Dr. Ward, the two
> reports of Dr. May of 09/25/2007 and 09/26/2007, and the
> 07/07/2009 report of Dr. Howard.

(Attached March 12, 2014 Magistrate's Decision, at ¶ 46.)

{¶ 14} Old Dominion contends the SHO erroneously relied on the reports of Drs. Ward, May, and Howard because they are patently inconsistent with a finding that claimant is medically unable to perform sustained remunerative work. In support of its position, Old Dominion quotes this court's statement that "the Supreme Court will not sanction the commission's mere citation of doctor's reports as justification for its decision if those reports are in conflict." *State ex rel. Zollner v. Indus. Comm.*, 10th Dist. No. 88AP-37 (Oct. 19, 1989). Old Dominion argues the magistrate erred in finding it unnecessary to address the alleged inconsistencies because the SHO only noted the reports of Drs. Ward, May, and Howard and did not rely on them.

{¶ 15} This court agrees with the magistrate's decision. The SHO did not rely on the reports of Drs. Ward, May, and Howard to determine claimant was entitled to PTD compensation.  Instead, the SHO only used the reports to evaluate the credibility of the reports he did rely on to make this determination, i.e., the reports of Drs. Fitz and Malinky.  Therefore, the SHO did not rely on inconsistent evidence in awarding PTD compensation, and we overrule the second objection.

{¶ 16} After an examination of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, and due consideration of Old Dominion's objections, we overrule the objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law as modified herein. We deny Old Dominion's request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

SADLER, P.J., and TYACK, J., concur.

————————————

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Old Dominion Freight Line, Inc., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 11AP-350 |
| | : | |
| Industrial Commission of Ohio<br>and Robert L. Mason, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

---

### MAGISTRATE'S DECISION

### Rendered on March 12, 2014

---

*Eastman & Smith Ltd.*, *Mark A. Shaw* and *Garrett M. Cravener*, for relator.

*Michael DeWine,* Attorney General, and Cheryl J. Nester*,* for respondent Industrial Commission of Ohio.

*Connor, Evans & Hafenstein, LLP, Nicole E. Rager* and *Katie W. Kimmet*, for respondent Robert L. Mason.

---

### IN MANDAMUS

{¶ 17} This is the second magistrate's decision to issue in this original action in which relator, Old Dominion Freight Line, Inc. ("Old Dominion" or "relator") requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission")

to vacate its order awarding permanent total disability ("PTD") compensation to respondent Robert L. Mason ("claimant") and to enter an order denying the compensation.

{¶ 18} Following this court's decision rendered May 31, 2012, this court issued its journal entry of June 5, 2012 that sustained the commission's and claimant's objections to the magistrate's decision and remanded the matter to the magistrate to determine the outstanding arguments that remain. *State ex rel. Old Dominion Freight Line, Inc. v. Indus. Comm.,* 10th Dist. No. 11AP-350, 2012-Ohio-2403.

{¶ 19} Unfortunately, Old Dominion filed a notice of appeal from this court's journal entry of June 5, 2012.  On October 24, 2013, the Supreme Court of Ohio sua sponte dismissed the appeal for lack of a final appealable order.  *State ex rel. Old Dominion Freight Line, Inc. v. Indus. Comm.,* 137 Ohio St.3d 467, 2003-Ohio-4655.

{¶ 20} This original action is now before the magistrate on this court's remand to the magistrate for his determination of the outstanding arguments that remain.

{¶ 21} The magistrate's decision rendered in this action on December 16, 2011 sets forth 29 enumerated findings of fact which this magistrate incorporates by reference.  For the sake of convenience, those 29 enumerated findings of fact are reproduced as follows:

> 1. On January 18, 2005, claimant sustained an industrial injury while employed as a truck driver for relator, a self-insured employer, under Ohio's workers' compensation laws. The industrial claim (No. 05-806440) is allowed for:
>
> Hip fracture; left trochanteric femur fracture; left femoral neck fracture; depressive disorder; left short leg syndrome; lumbar strain; post-traumatic stress disorder.
>
> 2. On September 25, 2007, treating physician Charles B. May, D.O., wrote to claimant's counsel:
>
> [I]t is my medical opinion that Mr. Mason will not be able to return to his previous employment as a truck driver on a permanent basis as a direct and proximate result of the allowed physical conditions in this claim.  Furthermore, it is my medical opinion that Mr. Robert Mason is, in fact, permanently and totally disabled from any form of substantial gainful employment as a direct and proximate

result of the allowed physical conditions in this claim. I have completed the physical capacity form that you have enclosed as well as the physician statement of permanent and total disability as you have requested.

3. On another document captioned "Statement of Physician Permanent Total Disability" dated September 26, 2007, Dr. May indicated that relator cannot return to his former position of employment and that he is "permanently and totally disabled."

4. On January 28, 2008, at claimant's request, claimant was examined by orthopedic surgeon Richard M. Ward, M.D. In a two-page narrative report, Dr. Ward opined:

[I]t is my opinion that as a direct result of the physical allowances from the injury that occurred on 1/18/05, he is not capable of returning to substantial gainful employment and should for this reason be granted permanent total disability.

5. On April 1, 2008, at claimant's request, he was examined by psychologist Lee Howard, Ph.D. In his 17-page narrative report, Dr. Howard opines that claimant is "an appropriate candidate for permanent total disability."

6. On July 7, 2009, Dr. Howard completed a form captioned "Statement of Physician." On the form, Dr. Howard indicates by his mark that the claimant cannot return to his former position of employment and he is permanently and totally disabled.

7. On July 22, 2009, claimant filed an application for PTD compensation. In support, claimant submitted the reports of Dr. May, the reports of Dr. Howard, and the report of Dr. Ward.

8. On July 24, 2009, the commission mailed a "Permanent Total Application Acknowledgment Letter" that notified the parties of the July 22, 2009 filing of the PTD application. The acknowledgment letter further stated:

Employers may submit additional medical evidence relating to this issue, including reports from Employer requested examinations. Medical evidence must be submitted by 09/22/2009. Employers must notify the Industrial

Commission in writing of their intent to submit medical evidence by 08/07/2009, if the evidence is to be considered by the Industrial Commission specialist(s).

9. By letter dated July 28, 2009, relator timely notified the commission of its intent to submit medical evidence.

10. On August 31, 2009, at relator's request, claimant was examined by Oscar F. Sterle, M.D. In his ten-page narrative report dated September 8, 2009, Dr. Sterle opined:

As related to the physical allowed conditions in the claim, the only residual impairment under this claim is a short-leg syndrome, which has been addressed with a lift. I find no other physical condition that would preclude Mr. Mason from sustaining remunerative employment.

The remaining allowed conditions in the claim have resolved and are considered to be at maximum medical improvement.

11. At relator's request, psychiatrist Richard H. Clary, M.D., conducted a file review. In his two-page narrative report dated September 3, 2009, Dr. Clary states:

Review of medical records indicate that the first physician of record released Mr. Mason to return to work on light duty in January of 2006. He later changed his opinion and said that Mr. Mason could return to sedentary work in March of 2006.

Accepting the objective medical findings in the file, it is my opinion that Mr. Mason is able to perform sedentary work which is appropriate with his allowed physical conditions. In my medical opinion, the allowed psychiatric conditions would not prevent him from working a sedentary job. In my medical opinion, the psychiatric conditions do not cause permanent total disability.

12. On September 8, 2009, at relator's request, claimant was examined by psychologist Michael A. Murphy, Ph.D. In his ten-page narrative report, Dr. Murphy opines:

**Opinion:** The following opinion is based on a reasonable degree of psychological certainty.

**Question 1: Based solely on the allowed psychological conditions of "Depressive Disorder"**

**and "Post-Traumatic Stress Disorder," what restrictions, if any, would you place on Mr. Mason's work activities?**

In my opinion, this Injured Worker's depression is mild. He has never attempted a psychotropic.

His condition of Post-Traumatic Stress Disorder is of mild severity as well. He denies symptoms of startle responses, psychic numbing, and he does continue to drive. His primary complaints with respect to post-traumatic stress are that of nightmares and flashbacks.

This Injured Worker drives, travels, handles his finances, uses a scooter when shopping, does laundry, cooks one meal a day, and performs light housework.

His appetite is normal, libido is normal, and his energy level is normal (see MCMI-III).

The Injured Worker's cognitive functions are fully intact with no short or long-term impairment.

Recall that his functioning is also reduced by unrelated factors (i.e., obesity, cardiac, sleep apnea, and other factors).

In my opinion, his DSM-IV psychological conditions would not preclude his former position.

**Question 2: Is Mr. Mason precluded from all sustained remunerative employment as a result of the residual impairment, from the allowed psychological conditions of "Depressive Disorder" and "Post-Traumatic Stress Disorder"?**

In my opinion, the allowed DSM-IV conditions are not work-prohibitive. His conditions are mild and do not require medication. Many of his symptoms fall in the normal range. His cognitive functions are intact, alert, and in the normal limit range. This does not account for the effects of his medications (related/unrelated).

(Emphasis sic.)

13. In keeping with the September 22, 2009 deadline for submission of medical evidence as set forth in the

commission's acknowledgment letter, on September 22, 2009, relator timely submitted to the commission the reports of Drs. Sterle, Clary, and Murphy.

14. On September 23, 2009, the commission mailed a "medical examination referral" letter to William R. Fitz, M.D. The letter informed Dr. Fitz that he was scheduled to perform an examination of the claimant on October 7, 2009. The letter also recites "pertinent medical records are enclosed." Apparently, with the letter, the commission sent copies of claimant's medical records, but not relator's medical records.

15. On October 5, 2009, the commission mailed a "medical examination referral" letter to psychiatrist John M. Malinky, M.D. The letter informed Dr. Malinky that he was scheduled to examine claimant on October 21, 2009. The letter also recites "pertinent medical records are enclosed." Apparently, with the referral letter, the commission sent copies of claimant's medical records, but not relator's medical records.

16. On October 7, 2009, at the commission's request, claimant was examined by Dr. Fitz. In his three-page narrative report, Dr. Fitz opined that claimant has a "37% impairment to the body as a whole."

17. On a physical strength rating form dated October 7, 2009, Dr. Fitz indicated by his mark "[t]his Injured Worker is incapable of work."

18. On October 21, 2009, at the commission's request, claimant was examined by Dr. Malinky. In his eight-page narrative report, Dr. Malinky opines:

**ASSESSMENT OF SEVERITY IN TERMS OF FUNCTIONAL LIMITATIONS DUE TO MR. MASON'S DEPRESSIVE DISORDER AND POST-TRAUMATIC STRESS DISORDER. (According to AMA Guides, 5th Ed.):**

[One] **Activities of daily living,** including cleaning, shopping, cooking, paying bills, maintaining his residence, caring appropriately for his grooming and hygiene, using telephone and directories. **Class 3, moderate impairment.**

[Two] **Social functioning,** his ability to get along with others; avoid altercations, fear of strangers, avoidance of interpersonal relationships and social isolation. **Class 3, moderate impairment.**

[Three] **Concentration, persistence, and pace** with respect to completing tasks in a timely manner and being able to concentrate and attend to that to which he is doing. **Class 3, moderate impairment.**

[Four] **Decompensation in work or work-like settings;** capacity to adapt to stressful circumstances including the ability to make decisions, attend to obligations, make schedules, complete tasks, interact with supervisors and peers. **Class 3, moderate impairment.**

The American Medical Association Guide to Evaluation of Permanent Impairment 5th Edition was utilized. The best estimate of the whole person impairment based only on the allowed Depressive Disorder and Post-Traumatic Stress Disorder is 30%.

**[Three]** Complete the enclosed occupational activity assessment. Based solely on the impairment resulting from the allowed mental and behavioral condition in this claim within my specialty and with no consideration to the injured workers age, education or work training: This injured worker is incapable of work.

The injured worker would not be able to deal with the public. This individual would not be able to handle the stress of a normal workday or workweek. He would have difficulties sustaining and persisting at tasks.

(Emphasis sic.)

19. On October 21, 2009, Dr. Malinky completed a form captioned "Occupational Activity Assessment, Mental and Behavioral Examination." On the form, Dr. Malinky indicated by his mark "[t]his injured worker is incapable of work."

20. On November 10, 2009, relator moved for leave to take the depositions of Drs. Fitz and Malinky.

21. Following a September 17, 2009 hearing, a staff hearing officer ("SHO") issued separate orders denying relator's motions for leave to depose the doctors. One of the orders states:

The Employer has requested to depose to Dr. Malinky, regarding the report written on 10/21/2009.

The Staff Hearing Officer finds that the request is unreasonable, because the reports submitted by the Employer from Drs. Murphy and Clary were not reasonably available to be included in the packet of information sent to Dr. Malinky prior to his examination of the Injured Worker. The lack of citation to all of the Employer's medical evidence is not a basis to grant the request to depose Dr. Malinky, and any potential defect can be remedied by the Employer by other means.

The other order states:
The Employer has requested to depose Dr. Fitz, regarding the report written on 10/07/2009.

The Staff Hearing Officer finds that the request is unreasonable because the Employer's evidence from Dr. Sterle, Murphy and Clary was filed on either 09/22/2009 or 09/23/2009, and the examination with Dr. Fitz was scheduled by letter mailed 09/23/2009. The lack of inclusion of the Employer's medical reports in the evidence cited by Dr. Fitz is not found to be sufficient reason to grant a deposition of Dr. Fitz.

Therefore, the request is denied.

22. On February 20, 2010, the commission mailed orders denying relator's requests for reconsideration of the SHO's orders denying leave to depose.

23. Relator requested a prehearing conference with the Columbus hearing administrator. Following a February 4, 2010 conference, the hearing administrator issued a compliance letter stating:

The medical reports submitted by the Employer, Dr. Clary's, 9/3/2009 report, Dr. Murphy's 9/8/2009 report and the report of Dr. Sterle, dated 9/8/2009 will be submitted to Dr. Fitz and Dr. Malinky to obtain an addendum to their reports

so that they can opine as to whether or not the Employer's medical reports changes their original opinions. After these reports are processed and in file, the claim will be forwarded to docketing to reschedule the hearing on the issue of Injured Worker's application to be declared permanently and totally disabled.

24. In response to the compliance letter, the commission mailed two letters, each dated February 4, 2010, to Dr. Malinky. One letter states:

Thank you for your report dated 10/21/2009. The Industrial Commission inadvertently omitted two timely filed reports by Dr. Michael Murphy and Dr. Oscar Sterle for your review and are asking whether or not this changes your original opinion. If there are any changes, please describe below and if not, state as such.

In response, Dr. Malinky wrote in his own hand:
I have reviewed the report of Dr. Murphy dated 9/8/2009 and the report of Dr. Sterle dated 8/31/2009. My opinion remains the same as stated in my report of 10/21/2009.

25. The second letter to Dr. Malinky dated February 4, 2010 states:

Thank you for your report dated 10/21/2009. The Industrial Commission inadvertently omitted the timely filed report by Dr. Richard Clary for your review and are asking whether or not this changes your original opinion. If there are any changes, please describe below and if not, state as such.

In response, Dr. Malinky wrote in his own hand:
I have read Dr. Clary's report dated 9/3/2009. My original opinion has not changed.

26. In response to the compliance letter, the commission mailed one letter dated February 4, 2010 to Dr. Fitz. The letter states:

Thank you for your report dated 10/7/2009. The Industrial Commission inadvertently omitted two timely filed reports by Dr. Oscar Sterle and Dr. Murphy for your review and are asking whether or not this changes your original opinion. If there are any changes, please describe below and if not, please state as such.

In response, Dr. Fitz wrote in his own hand:

These two reports were reviewed and do not change the opinions expressed in my report.

27. Following a March 16, 2010 hearing, an SHO issued an order awarding PTD compensation starting September 25, 2007. The SHO's order explains:

Permanent and total disability compensation is awarded from 09/25/2007 for the reason that this is the date of Dr. May's report supporting the award.

It is the finding of the Staff Hearing Officer that the Injured Worker is permanently and totally disabled as the result of the medical effects of his allowed physical and psychological injuries. The Injured Worker has been prevented from returning to any form of sustained remunerative employment as a consequence of each of these two categories of medical condition. Such a finding mandates an award of permanent total disability compensation without further consideration of the "Stephenson" factors. In reaching this conclusion, the Staff Hearing Officer relies upon the independent medical examinations and evaluations performed at the direct[ion] of the Industrial Commission: William R. Fitz, M.D., who examined with respects to the allowed physical injuries, and John M. Malinky, Ph.D., who examined with respects to the allowed psychological conditions. In evaluating the credibility of these reports, the Staff Hearing Officer particularly notes the 01/28/2008 report of Dr. Ward, the two reports of Dr. May of 09/25/2007 and 09/26/2007, and the 07/07/2009 report of Dr. Howard. The Staff Hearing Officer further particularly notes that the Injured Worker has a claim which is allowed for a very serious left hip fracture, and also for psychological conditions, notably post traumatic stress disorder, together with some physical conditions related to the allowed hip fracture.

The Staff Hearing Officer has considered the prior denial of a permanent and total application in early 2007, the medical submitted on behalf of the Employer, and the Employer's arguments with respect to the sufficiency of the evidence submitted in support of the application. Specifically, the Staff Hearing Officer has considered the Employer's

argument that the Injured Worker suffers from multiple unallowed medical conditions which have been improperly evaluated by the medical evidence in support of the application, and has further considered the Employer's arguments with respect to alleged inconsistency in these reports.

It is plain that the Injured Worker does suffer from medical conditions over and above his allowed injuries. In particular, the Injured Worker has multi-level spondylosis in the lower back, which may impact the Injured Worker's loss of function in the lower back, when consideration is being properly given to his allowed lumbar strain. In light of the fact that the medical professionals specifically state that they are considering only allowed conditions, there is no direct evidence of any improper consideration of these unallowed conditions affecting the same body part.

The Employer further argues that the reports of Drs. Howard and May improperly consider the Injured Worker's age, education, work experience, and similar disability factors in reaching their conclusions. Reading the reports in context, they are plainly stating that the Injured Worker has lost the ability to engage in any form of sustained remunerative employment. Further, an error in one of Dr. May's reports which appears to state he is considering a right hip fracture, is plainly merely a clerical error as there is no evidence the Injured Worker ever had a right hip fracture. Finally, the argument that the physical evidence supports the conclusion that the Injured Worker could engage, on a physical basis, in part-time sedentary work is not supported by the reports cited. This is an inference drawn argumentatively, but not stated by the reports under consideration.

In light of the fact that the independent examinations both conclude that the Injured Worker is unable to engage in sustained remunerative employment, solely as the result of the allowed conditions, the weight of the evidence strongly supports the conclusion that the physical and psychological conditions taken together do so. Consequently, an award of permanent total disability compensation is made.

28. On May 20, 2010, the three-member commission mailed an order denying relator's request for reconsideration.

29. On April 7, 2011, relator, Old Dominion Freight Line, Inc., filed this mandamus action.

<u>Findings of Fact</u>:

{¶ 22} Here, the magistrate renders further enumerated findings of fact.

{¶ 23} 30. This original action was assigned to this magistrate who then ordered the filing of evidence and briefs.

{¶ 24} 31. On December 16, 2011, as previously noted, the magistrate issued his magistrate's decision which sets forth findings of fact and conclusions of law.

{¶ 25} 32. Because the commission had failed to submit the reports of relator's doctors to Drs. Fitz and Malinky prior to the examinations performed by Drs. Fitz and Malinky, the magistrate recommended a writ of mandamus ordering the commission to vacate the Staff Hearing Officer's ("SHO") order of March 16, 2010 awarding PTD compensation, and to conduct further proceedings regarding the PTD application after elimination of the reports of Drs. Fitz and Malinky from further evidentiary consideration. The magistrate recommended that the writ order the commission to schedule new medical examinations and, in so doing, submit to the newly selected commission physicians the medical evidence of the employer and the claimant as provided by the commission's rules.

{¶ 26} 33. On May 31, 2012, as previously noted, this court issued a written decision in this action. In its decision, this court held that relator was not prejudiced when the commission submitted the supplemental evidence to its doctors after their examinations had been performed.

{¶ 27} 34. As earlier noted, relator filed a notice of appeal from this court's journal entry of June 5, 2012. On October 24, 2013, the Supreme Court of Ohio sua sponte dismissed the appeal for lack of a final appealable order.

{¶ 28} 35. On November 13, 2013, the judgment entry of the Supreme Court of Ohio was filed in this court.

{¶ 29} 36. This original action is now before the magistrate on this court's remand to its magistrate for his determination of the outstanding arguments that remain.

Conclusions of Law:

{¶ 30} Two issues are presented:   (1) was it reasonable for the commission to deny relator's motions to depose Drs. Fitz and Malinky, and (2) did the SHO abuse his discretion in noting the reports of Drs. Ward, May, and Howard when he evaluated the credibility of the reports of Drs. Fitz and Malinky?

{¶ 31} The magistrate finds:   (1) it was reasonable for the commission to deny relator's motions to depose Drs. Fitz and Malinky, and (2) the SHO did not abuse his discretion in noting the reports of Drs. Ward, May, and Howard when he evaluated the credibility of the reports of Drs. Fitz and Malinky.

{¶ 32} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

## Denial of Depositions

{¶ 33} R.C. 4123.09 provides that the commission "may cause depositions of witnesses * * * to be taken."

{¶ 34} Supplementing the statute, former Ohio Adm.Code 4121-3-09(A)(6) set forth a procedure for obtaining depositions of a commission or bureau physician. Deposition requests were evaluated under a reasonableness standard. Former Ohio Adm.Code 4121-3-09(A)(6)(c) and (d); *State ex rel. Cox v. Greyhound Food Mgt., Inc.,* 95 Ohio St.3d 353, 355, 2002-Ohio-2335.

{¶ 35} Former Ohio Adm.Code 4121-3-09(A)(6)(d) stated:

> The factors to be considered by the hearing administrator when determining the reasonableness of the request for deposition and interrogatories include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay.

{¶ 36} After extensively discussing the deficiencies of the "substantial disparity" and "exclusive reliance" criteria, the *Cox* court concluded that the former code's first two criteria, in most cases, were not very useful in determining the reasonableness of a deposition request. *Cox,* at 356. The court stated that, fortunately, the former code implies that other factors may be considered as circumstances dictate. In *Cox,* the court

relied upon two other criteria to judge the reasonableness of the deposition request: (1) does a defect exist that can be cured by deposition; and (2) is the disability hearing an equally reasonable option for resolution?

{¶ 37} Presumably, the *Cox* case prompted the commission to amend Ohio Adm.Code 4121-3-09 effective April 1, 2004. The provision of former Ohio Adm.Code 4121-3-09(A)(6)(d), quoted above, was deleted.

{¶ 38} Currently, effective August 19, 2013, Ohio Adm.Code 4121-3-09(A)(8)(a) provides that a request to take the oral deposition of a commission or bureau physician "shall be submitted in writing to the hearing administrator."

{¶ 39} Ohio Adm.Code 4121-3-09(A)(8) further provides:

> (c) If the hearing administrator finds that the request is a reasonable one, the hearing administrator shall issue a compliance letter that will set forth the responsibilities of the party that makes the request.
>
> * * *
>
> (d) * * * [W]hen determining the reasonableness of the request for deposition or interrogatories the hearing administrator shall consider whether the alleged defect or potential problem raised by the applicant can be adequately addressed or resolved by the claims examiner, hearing administrator, or hearing officer through the adjudicatory process within the commission or the claims process within the bureau of workers' compensation.

{¶ 40} As earlier noted, in denying relator's motion to depose Dr. Malinky, the SHO explained:

> The Employer has requested to depose to Dr. Malinky, regarding the report written on 10/21/2009.
>
> The Staff Hearing Officer finds that the request is unreasonable, because the reports submitted by the Employer from Drs. Murphy and Clary were not reasonably available to be included in the packet of information sent to Dr. Malinky prior to his examination of the Injured Worker. The lack of citation to all of the Employer's medical evidence is not a basis to grant the request to depose Dr. Malinky, and any potential defect can be remedied by the Employer by other means.

{¶ 41} As earlier noted, in denying relator's motion to depose Dr. Fitz, the SHO explained:

> The Employer has requested to depose Dr. Fitz, regarding the report written on 10/07/2009.
>
> The Staff Hearing Officer finds that the request is unreasonable because the Employer's evidence from Dr. Sterle, Murphy and Clary was filed on either 09/22/2009 or 09/23/2009, and the examination with Dr. Fitz was scheduled by letter mailed 09/23/2009. The lack of inclusion of the Employer's medical reports in the evidence cited by Dr. Fitz is not found to be sufficient reason to grant a deposition of Dr. Fitz.
>
> Therefore, the request is denied.

{¶ 42} Relator argues that the SHO's stated grounds for denial of the depositions are unreasonable because relator filed the reports of its physicians in a timely manner pursuant to Ohio Adm.Code 4121-3-34(C)(4)(b).  But this court has already, in effect, answered relator's argument.  This court has determined that relator suffered no prejudice when the commission submitted relator's physicians' reports to Drs. Fitz and Malinky after the examinations were performed and the initial reports were rendered.

{¶ 43} In the magistrate's view, relator's request to depose Drs. Fitz and Malinky must be deemed unreasonable in light of this court's May 31, 2012 decision.

### Reliance Upon the Reports of Drs. Fitz and Malinky

{¶ 44} Turning to the second issue, the commission has the exclusive authority to evaluate evidentiary weight and credibility.  *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987).  In explaining its decisions, the commission need not set forth the reasons for finding one report more persuasive than another.  *State ex rel. Bell v. Indus. Comm.*, 72 Ohio St.3d 575, 577 (1995)

{¶ 45} In *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250 (1996), the court had occasion to succinctly summarize law applicable here:

> *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721, directed the

commission to cite in its orders the evidence on which it *relied* to reach its decision. Reiterating the concept of reliance, *State ex rel. DeMint v. Indus. Comm.* (1990), 49 Ohio St.3d 19, 20, 550 N.E.2d 174, 176, held:

"*Mitchell* mandates citation of only that evidence *relied* on. It does not require enumeration of all evidence *considered.*" (Emphasis original.)

Therefore, because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings (*State ex rel. Brady v. Indus. Comm.* [1989], 28 Ohio St.3d 241, 28 OBR 322, 503 N.E.2d 173) gives rise to a second presumption-that the commission indeed considered all the evidence before it. That presumption, however, is not irrebuttable, as *Fultz* demonstrates.

*Id.* at 252.

{¶ 46} At issue here is the following portion of the SHO's order of March 16, 2010:

[T]he Staff Hearing Officer relies upon the independent medical examinations and evaluations performed at the direct[ion] of the Industrial Commission: William R. Fitz, M.D., who examined with respects to the allowed physical injuries, and John M. Malinky, Ph.D., who examined with respects to the allowed psychological conditions.   In evaluating the credibility of these reports, the Staff Hearing Officer particularly notes the 01/28/2008 report of Dr. Ward, the two reports of Dr. May of 09/25/2007 and 09/26/2007, and the 07/07/2009 report of Dr. Howard.

{¶ 47} According to relator, the SHO's order of March 16, 2010 "improperly relied" upon the medical reports of Drs. Ward, May, and Howard.  (Relator's brief, 18.)  Relator similarly alleges that the SHO "committed a mistake of law by underlining relying upon the reports of Drs. May, Ward, and Howard in evaluating the credibility of Drs. Fitz and Malinky." (Emphasis added) (Relator's brief, 18-19.)

{¶ 48} Relator's statements, as quoted above, misunderstand the concept of *reliance* as that concept has developed in the law relating to mandamus actions reviewing decisions of the commission and its hearing officers.  Clearly, that portion of

the SHO's order of March 16, 2010 does not place *reliance* upon the reports of Drs. Ward, May, and Howard as the concept of *reliance* is understood in well-settled law. Moreover, the SHO's statement that he "notes" the reports of Drs. Ward, May, and Howard does not suggest *reliance* upon the reports of Drs. Ward, May, and Howard.

{¶ 49} Clearly, the SHO considered the reports of Drs. Ward, May, and Howard in reaching his decision to rely upon the reports of Drs. Fitz and Malinky. But consideration of those reports is not equatable to *reliance* upon those reports.

{¶ 50} Here, relator extensively argues that the reports of Drs. Ward, May, and Howard are inconsistent with the commission's finding that claimant is medically unable to perform sustained remunerative employment. Even if relator is correct in some or all of its arguments that analyze the reports of Drs. Ward, May, and Howard, those arguments need not be addressed here.

{¶ 51} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
KENNETH W. MACKE


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).